## DAVID DENNIS *v.* STATE OF MARYLAND

[No. 175, September Term, 1971.]

*Decided December 7, 1971.*

The cause was argued before ORTH, THOMPSON and MOYLAN, JJ.

*John E. Jacob, Jr.,* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Fulton P. Jeffers, State's Attorney for Wicomico County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The narrow question presented on this appeal is What is that quality of testimony required to rebut the universally-recognized presumption of sanity at the time of an alleged offense and to cast upon the State the burden of proving criminal responsibility, as it must prove all other elements of an offense, beyond a reasonable doubt?

The appellant, David Dennis, was convicted in the Circuit Court for Wicomico County by a jury, presided over by Judge E. McMaster Duer, of rape. No question is before us as to the satisfactory establishment by the State of the *corpus delicti* of the crime. Nor is there any question before us of the criminal agency of the appellant, save in terms of his criminal responsibility.

The appellant had entered and went to trial upon, *inter alia,* a plea of not guilty by reason of insanity at the time of the alleged offense. In accordance with proper pro-

cedure, see *Jenkins v. State*, 238 Md. 451, and *Strawder-man v. State*, 4 Md. App. 689, testimony was taken on the question of criminal responsibility by the trial judge outside the presence of the jury. At the conclusion of that preliminary examination, the trial judge ruled that the appellant had not produced satisfactory evidence of insanity to cross the threshold and to rebut the presumption of sanity. He, therefore, refused to submit the issue to the jury. The appellant appeals from that ruling.

Article 59, Section 25, sets out the essentially two-part test for criminal insanity. It provides:

> "A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disorder' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

At issue in the instant case is not the "substantial capacity" of the appellant "to appreciate the criminality of his conduct"—the so-called cognitive aspect of the test —but solely the "substantial capacity" of the appellant "to conform his conduct to the requirements of law"— the so-called volitional aspect of the test.

The primary defense witness was Dr. Frances Reid Nabors, a doctor of medicine specializing in psychiatry and serving on the staff of the Clifton T. Perkins State Hospital. There is no question but that Dr. Nabors was an expert witness, qualified to express an opinion on the ultimate question of criminal responsibility. See *Saul v. State*, 6 Md. App. 540. It is also clear that Dr. Nabors was offering testimony not to "some undefined mental disorder or instability," see *Bradford v. State*, 234 Md. 505; *Cole v. State*, 212 Md. 55; *Bryant v. State*, 207 Md. 565;

*Thomas v. State,* 206 Md. 575, but to the ultimate consideration of the "substantial capacity" of the appellant here to "conform his conduct to the requirements of law." The only question before us is whether the ultimate opinion expressed by Dr. Nabors had sufficient probative value to cross the threshold and "to raise a question in the minds of reasonable men as to whether he [the appellant] is or is not sane." *Lipscomb v. State,* 223 Md. 599; *Strawderman v. State, supra.* We hold that it had not.

The testimony of Dr. Nabors was both vacillating and equivocal. Her first tentative testimonial offerings were encouraging to the appellant's cause. After making the initial observations that the appellant had an I.Q. of 67 which she classified as "borderline defective"; that he suffered hallucinations; that he suffered a sex-connected delusion that his sexual performance was so satisfying to the female that even the victim of a forcible rape would not report him; that he believed that "the way not to get mentally sick was to have plenty of sex with women"; that he was "extremely oversexed" amounting to "satyriasis"; and that he was dangerous to women, Dr. Nabors testified that the appellant was, at the time of the commission of the offense, suffering from schizophrenia. She further testified that in her opinion the appellant was not able to conform his conduct to the requirements of law.

On cross-examination, however, Dr. Nabors testified that it was she who had presented the appellant's case to the staff conference at Clifton T. Perkins and that it was the unanimous opinion of that conference, including herself, that the appellant "did not suffer from a mental disorder at the time of the alleged offense of such severity as to cause him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." She testified that she did not have sufficient evidence of the appellant's schizophrenia to justify her in presenting such a proposition to the staff conference. She testified further that she her-

self had written to the appellant's lawyer, "My diagnostic impression was mental retardation, borderline or mild, competent to stand trial and responsible at the time of the offense." She testified that that was still her opinion "with reservations." Her primary umbrage at the report of the staff conference appeared clearly to be "that my colleagues gave no consideration to my plea for leniency." She reiterated that her prime purpose in testifying before the court was to make a "plea for leniency."

When pressed by the Court for her present opinion, Dr. Nabors stated:

> "Well, I think given his low mentality, and given his oversexed condition, and indications, shall we say, of schizophrenia, although I haven't got a good case for schizophrenia, then it looks like maybe he was uncontrollable."

Just before Dr. Nabors left the stand, the following colloquy took place between herself and the Court:

> "The Court: Then why did you say, Doctor, that he was responsible at the time of the offense? Didn't you know the Maryland rule?
> The Witness: Yes. But I didn't think I had enough evidence to say otherwise.
> The Court: Do you think so now?
> The Witness: No. I think that the evidence is sufficient that maybe we could consider treatment for this young man, rather than punishment. That's what I think."

We feel that the testimony of Dr. Nabors was so ambivalent and equivocal as to lack probative thrust in any direction. Her clear concern seemed to be that the appellant not be subjected to the punitive process but rather to a course of treatment, prescribed by herself, that would amount to "a chemical semi-castration, reducing the sexual urge by a drug called provera." Her disagreement with the report of the staff conference ap-

peared to stem solely from the failure of that report to recommend "leniency" as she had strongly suggested. Her ultimate concern from the witness box was with "treatment for this young man, rather than punishment." The net effect of her testimony cannot be said to support an affirmative expert opinion that this appellant lacked the substantial capacity to conform his conduct to the requirements of law.

The appellant urges further, however, that even ambivalence in an expert should be enough to generate doubt in the minds of reasonable men for purposes of rebutting the presumption. Such is not the law. In *Jenkins v. State, supra,* at 465, the Court of Appeals dealt squarely with the question of whether a state of genuine doubt as to a defendant's criminal responsibility by a qualified psychiatrist was enough to rebut the presumption of sanity. The Court there held that the inability of the psychiatrist to offer a firm opinion one way or the other did not constitute "legally persuasive testimony on the point of insanity at the time of the offenses," and did not, therefore, cross the threshold.

The presumption of sanity will stand until rebutted by a proper expert, addressing himself to the ultimate issue, and offering an affirmative conclusion thereon, clearly countervailing that presumption. To permit the presumption to be dissipated by evidence less convincing and affirmative would be to derogate unnecessarily from its valuable and salutary purpose. See *Bradford v. State, supra,* at 509. Testimony as to mere doubt or equilibrium on a question, even by an expert, will not critically erode a proposition the truth of which is so rooted in the common experience of man as to carry its own *a posteriori* weight into the argument.

*Judgment affirmed.*