PEOPLE v GAUNTLETT

Docket Nos. 76435, 76564, 76578. Submitted April 9, 1984, at Lansing.
—Decided May 17, 1984.

Roger A. Gauntlett was convicted, on his plea of nolo contendere,
of one count of first-degree criminal sexual conduct, Kalamazoo
Circuit Court. He was originally charged with two counts of
first-degree criminal sexual conduct and three counts of second-
degree criminal sexual conduct involving his stepchildren. John
E. Fitzgerald, J., accepted defendant's plea, found defendant
guilty and, in chambers, discussed with the parties the sentence
he intended to impose. Prior to sentencing, Judge Fitzgerald
disqualified himself because of the uproar generated when the
proposed sentence was made public. The chief circuit judge
then assigned Richard Lamb, J., to the case. Again prior to
sentencing the case was reassigned, this time to Robert L.
Borsos, J. Judge Borsos considered on his own motion the
matter of his qualification to sentence defendant and filed an
11-page opinion in which he concluded that he was not disquali-
fied. Defendant filed a motion to limit sentence to the sentence
"imposed" by Judge Fitzgerald and a motion for reconsidera-
tion of Judge Borsos's decision that he was not disqualified. At
sentencing, the assistant prosecutor also filed a motion to
disqualify Judge Borsos and defendant argued his motion to
limit the sentence to that "imposed" by Judge Fitzgerald.
Judge Borsos denied both motions. The assistant prosecutor
then handed the court a written motion to refer the matter of
disqualification to the chief judge pursuant to the General
Court Rule. Judge Borsos immediately denied the motion. The
assistant prosecutor then took the position that the court
lacked jurisdiction to proceed with sentencing and indicated an
intention not to participate in the proceedings any further.
Defense counsel requested a five- to seven-day adjournment of

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 873.
[2] 65 Am Jur 2d, Rape §§ 114, 115.
[3-6] 5 Am Jur 2d, Appeal and Error § 938.
[5, 6] 21 Am Jur 2d, Criminal Law § 541.
[7] 46 Am Jur 2d, Judges § 217.

sentencing in order to discuss with his client the possibility of withdrawing his plea. Judge Borsos refused an adjournment but offered to hear defendant's motion to withdraw his plea. Counsel for defendant insisted that defendant was not in a position to make a rational decision on whether to retain or withdraw his plea. In light of that, Judge Borsos denied the motion for an adjournment and sentenced defendant to five years probation with the first year to be spent in the county jail with no credit for time served, ordered defendant to pay court costs, and ordered defendant to "within 30 days submit [himself] to castration by chemical means patterned after the research and treatment [with the drug Depo-Provera] of the Johns Hopkin[s] Hospital in Baltimore, Maryland, and continue same for the five years of your probation under the supervision of this court". Defendant appealed in Docket Nos. 76435 and 76564 and the people appealed from the sentence in Docket No. 76578. *Held:*

1. The condition of probation requiring the defendant to submit to treatment with Depo-Provera is an unlawful condition.

2. Defendant's challenge to his sentence opens up the entire sentence to review. An appellate court may review a criminal defendant's sentence and order resentencing where the sentence is so significantly disproportionate to the sentence generally imposed as to shock the conscience of the reviewing court. A sentence of probation in this case is so significantly disproportionate as to shock the conscience of the Court of Appeals.

3. Imposition of a greater sentence upon resentencing where the reviewing court finds the sentence imposed to be so disproportionately lenient as to shock the conscience of the court does not violate the prohibition against double jeopardy.

4. A party challenging the qualifications of a judge who has heard the case has a right to a rehearing by another judge. Judge Borsos erred in not referring the matter of his disqualification to the chief judge when requested by the prosecutor.

5. The Court of Appeals specifically declined to decide whether the people can appeal a sentence since the issue is pending before the Supreme Court.

Conviction affirmed, sentence set aside, and case remanded for resentencing before another judge to be assigned by the State Court Administrator with instruction that probation is not an appropriate sentence in this case.

1. CONSTITUTIONAL LAW — APPEAL.

Constitutional questions will not be passed upon when other

decisive questions are raised by the record which dispose of the case.

2. RAPE — PROBATION — CHEMICAL TREATMENT.

It is an unlawful condition of probation for a sentencing court to require a sex offender to submit to treatment with Depo-Provera.

3. CRIMINAL LAW — APPEAL — SENTENCING.

A defendant who challenges any part of his sentence opens up for appellate review the entire sentence.

4. CRIMINAL LAW — APPEAL — SENTENCING.

A criminal defendant may request review of the exercise of a trial court's discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

5. CRIMINAL LAW — APPEAL — SENTENCING.

An appellate court may review a criminal defendant's sentence and order resentencing where the sentence is so significantly disproportionate to the sentences generally imposed as to shock the conscience of the reviewing court.

6. CRIMINAL LAW — APPEAL — SENTENCING — DOUBLE JEOPARDY.

Imposition of a greater sentence upon resentencing where the reviewing court finds the sentence imposed to be so disproportionately lenient as to shock the conscience of the court does not violate the prohibition against double jeopardy.

7. JUDGES — DISQUALIFICATION OF JUDGE — REHEARING — COURT RULES.

A party challenging the qualifications of a judge who has heard the case has a right to a rehearing by another judge (GCR 1963, 912.3[e]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Principal Appellate Attorney, for the people.

*Gemrich, Moser, Dombrowski, Bowser & Fette* (by *Willliam L. Fette),* for defendant.

*John D. O'Hair,* Prosecuting Attorney, *Edward*

*Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for amicus curiae Wayne County Prosecutor.

Before: T. M. BURNS, P.J., and BEASLEY and N. J. KAUFMAN,* JJ.

PER CURIAM. In Docket Nos. 76435 (as of right) and 76564 (on leave to appeal granted), defendant appeals from his July 12, 1983, conviction, on plea of nolo contendere before Judge John E. Fitzgerald, Kalamazoo County Circuit Court, to one count of criminal sexual conduct in the first degree and the probation sentence with conditions imposed January 30, 1984, by Judge Robert L. Borsos, Kalamazoo County Circuit Court. In Docket No. 76578, the people have filed a claim of appeal from the sentence.

In the Fall of 1982, a complaint and warrant issued, charging defendant with two counts of criminal sexual conduct in the first degree arising from defendant's acts of sexual intercourse with his 14-year-old stepdaughter in April and October, 1981. The complaint also charged three counts of criminal sexual conduct in the second degree arising from defendant's sexual fondling of his 12-year-old stepson in January, 1982. The district court conducted a preliminary examination on October 21, 1982, and bound defendant over for trial on those charges. An information charging those offenses was filed November 1, 1982.

Defendant appeared before Judge Fitzgerald July 12, 1983, and offered to plead nolo contendere to one count of criminal sexual conduct in the first degree with the stepdaughter pursuant to an

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

agreement that the other counts would be dismissed at sentencing. After advising defendant of the rights and privileges required by GCR 1963, 785.7, the court accepted defendant's plea.

On October 18, 1983, Judge Fitzgerald met in chambers with the parties and counsel and discussed the sentence he intended to impose. It reportedly included a probation term, one year jail time and a requirement that defendant contribute to a rape counseling center for Kalamazoo County. At the conclusion of the hearing, Judge Fitzgerald made a brief statement on the record:

"The court has shared with counsel what its inclination is. The court obviously has not pronounced the sentence and therefore the matters that we discussed in chambers are exactly that: matters discussed in chambers and not a matter of public record and should be kept as such."

The assistant prosecutor assigned to the case informed the victim's father about the proposed sentence. When it became public, the Kalamazoo County Circuit Judges filed a grievance with the State Bar Grievance Commission against the assistant prosecutor. The commission later dismissed the grievance after the circuit court requested it be withdrawn and after the commission found no basis for action. In the meantime, the prosecution filed a motion to disqualify Judge Fitzgerald. On November 16, 1983, Judge Fitzgerald disqualified himself on his own motion because of those developments.

The chief circuit judge assigned the case by blind draw to Judge Richard Lamb. The prosecution moved to disqualify Judge Lamb because he joined in the circuit court's grievance against the assistant prosecuting attorney. Defendant later

filed a motion to disqualify the assistant prosecutor. On January 20, 1984, the assistant prosecutor withdrew his motion to disqualify Judge Lamb and requested that the case be assigned to another attorney within the prosecutor's office. On January 25, 1984, Judge Lamb filed an opinion and order disqualifying himself on his own motion. That day Judge Fitzgerald, then chief circuit judge, reassigned the case to Judge Borsos.

On January 26, 1984, Judge Borsos gave the assistant prosecutor, defendant, and defense counsel sealed envelopes with the warning that the attorneys not open them until 9:00 a.m. Saturday, January 28, 1984. The court allowed defendant to open his envelope in private sooner but directed him not to discuss the contents until after 9:00 a.m. Saturday. The envelope contained a two-page bibliography of medical articles dealing with drug treatment of male sex offenders, two articles from the *American Journal of Psychiatry* on the same subject, and a two-page description of the drug Depo-Provera from the *Physicians' Desk Reference.* Defendant and the attorneys respected the limitations placed on the information by Judge Borsos, but a local newspaper reporter found out about the envelope and Judge Borsos received many phone calls from the media. So, about 10:00 a.m. on Saturday, January 28, 1984, Judge Borsos took a copy of the medical information to the local newspaper.

In the meantime, on January 26, 1984, Judge Borsos considered on his own motion the matter of his qualification to sentence defendant and filed an 11-page opinion in which he concluded that he was not disqualified. He set sentencing for January 30, 1984.

On January 27, 1984, defendant filed a motion to

limit sentence to the sentence "imposed" by Judge Fitzgerald and, on January 30, 1984, a motion for reconsideration of Judge Borsos's decision that he was not disqualified. At sentencing on January 30, 1984, the assistant prosecutor also filed a motion to disqualify Judge Borsos and defendant argued his motion to limit the sentence to that "imposed" by Judge Fitzgerald. Judge Borsos denied both motions. The assistant prosecutor then handed the court a written motion to refer the matter of disqualification to the chief judge pursuant to GCR 1963, 912.3(c)(1). Judge Borsos immediately denied the motion. The assistant prosecutor then took the position that the court lacked jurisdiction to proceed with sentencing and indicated an intention not to participate in the proceedings any further.

Defense counsel requested a five- to seven-day adjournment of sentencing in order to discuss with his client the possibility of withdrawing his plea. Judge Borsos refused an adjournment but offered to hear defendant's motion to withdraw his plea. Counsel for defendant insisted that defendant was not in a position to make a rational decision on whether to retain or withdraw his plea. In light of that, Judge Borsos denied the motion for an adjournment.

The court proceeded to sentencing. Defendant declined an opportunity for allocution. His attorney spoke to the court on his behalf and contradicted some of the matters mentioned in the presentence report.

In a preamble to the sentence, Judge Borsos said, in part:

"Recently, however, there have been important scientific discoveries and medical studies on what medical people have always known to be true, that some men are truly over-sexed; they have a greater supply of male

hormones that causes them to have much stronger sex urges than the normal male and are much less able to resist temptation; like a furnace which overheats a house if the thermostat is set too high."

Judge Borsos said to defendant:

"On your behalf, there are many things that you are not. You are not a violent rapist who drags women and girls off the street and into the bushes or into your car from a parking lot; and I have had a lot of these in my courtroom, and I'm sure we have many in our community that I will see in the future, and we probably have some that I won't see. You are not a child chaser, one whose obsession with sex causes him to seek neighborhood children or children in parks or in playgrounds, and we see these people in court. You are a man who has warm personal feelings for your stepchildren, but you let them get out of hand, and we see a number of people like you in our courts."

Judge Borsos sentenced defendant to five years probation, with the first year in the county jail "with no credit for time you have already served". Judge Borsos also ordered defendant to pay "to the County of Kalamazoo as court costs the sum of $25,000 for part of the expense the county has been put to by this case". Finally, Judge Borsos ordered that defendant "within 30 days submit yourself to castration by chemical means patterned after the research and treatment of the Johns Hopkin[s] Hospital in Baltimore, Maryland, and continue same for the five years of your probation under the supervision of this court". Judge Borsos reserved the matter of restitution until a later time.

In "post-sentencing remarks", the court suggested that defendant might later want to make a

contribution for a research and treatment center for sex offenders. He said:

"We need such a center, but I'm not making it part of the sentence. If after all the emotion dies down you feel that a community has treated you fairly and want to do something for Southwestern Michigan, the establishment of such a center would be a great thing. It might also make you feel that your life, like that of your ancestor W. E. Upjohn, was important to this community and that you left this world a better place for having been here."

Judge Borsos denied defendant's motion for bond pending appeal. Defendant began serving his sentence in the Kalamazoo County jail immediately after it was imposed.

On February 6, 1984, without notice to the parties, Judge Borsos filed a seven-page document which he entitled, "Supplement to Sentencing Remarks and Amendment to Order of Probation". In those remarks, Judge Borsos defended the condition of probation that defendant submit to Depo-Provera treatment. In addition, he directed that the probation sentence would be set aside and that defendant would be resentenced if he did not voluntarily undertake the Depo-Provera treatment.

On February 17, 1984, Judge Borsos entered a formal order amending the order of probation in which he directed:

"That Term #14 be added to the probation order as follows:

"It was the intent of this court that Depo-Provera medication be an essential and an integral part of the probationary order in order to give reasonable assurance that throughout the five year probationary term that defendant would not be a danger to young chil-

dren. It was *not* the intent of this court to give probation with jail without this medical protection to the public.

"If, for any reason, it is not possible to carry out a course of treatment with Depo-Provera whether because of defendant's failure to cooperate, an inability to obtain medical services to carry out such treatment, a medical evaluation which should indicate that such treatment would be harmful to the defendant or not be medically advisable, or for any other reason, or if some appellate court should determine that such a course of treatment making use of Depo-Provera to be inappropriate, unlawful, excessive, not within the trial court's power to give, or not a proper term of probation, or shall set it aside for any other reason; then the entire probation shall be set aside for failure of the condition on which it was based and the defendant then be resentenced by this judge, his successor or by some other judge appointed to do so. The probation order shall be amended accordingly."

This Court stayed the provision for Depo-Provera treatment pending appeal and consolidated the appeals. On March 5, 1984, Judge Borsos enforced the plea agreement by dismissing the remaining four charges against defendant.

Defendant's primary argument on appeal is a challenge to the condition of probation which requires that he submit to Depo-Provera treatment.

Defendant argues that the condition of probation requiring the taking of Depo-Provera (what the trial court referred to as "castration by chemical means") is unconstitutional and unlawful and, therefore, incapable of acceptance. Defendant argues that chemical castration is a form of sterilization which is unconstitutional as cruel and unusual punishment, a violation of fundamental rights of liberty, privacy, bodily integrity, equal protection, and procedural and substantive due process.

It is unnecessary to reach defendant's constitu-

tional arguments because the condition of probation is an unlawful condition. It is elementary that appellate courts will not decide constitutional questions when the issue raised can be decided on alternative, nonconstitutional grounds raised in the appeal. See, for example, *Lisee v Secretary of State,* 388 Mich 32, 40, 41; 199 NW2d 188 (1972); *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960); 7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.06, pp 278-279.

Defendant argues that the condition of probation requiring him to take Depo-Provera is an unlawful condition, without common-law or statutory authority in Michigan and without precedent in any model act or judicial standard. In addition, defendant argues, the condition is punitive and was intended to be so by Judge Borsos. The condition is also impermissibly vague, unlawful as a disguised form of punishment, coercive, incapable of acceptance, and detrimental to his rehabilitation, defendant says.

The starting point for the analysis is the probation statute. MCL 771.3(4); MSA 28.1133(4) begins: "The court may impose other *lawful* conditions of probation as the circumstances of the case may require or warrant, or as in its judgment may be proper." (Emphasis added.)

Depo-Provera is a medroxyprogesterone acetate manufactured by the Upjohn Company. The drug is similar to the progesterone hormones produced by the body naturally. Although the drug is used as a birth control agent in foreign countries, its only licensed use in the United States is for the adjunctive therapy and palliative treatment of certain inoperable, recurrent and metastatic uterine and kidney cancers. *Physicians' Desk Reference,* p 1765 (34th ed, 1980). When administered to

males, Depo-Provera lowers the level of testosterone, reduces the sex drive, and in most instances causes temporary impotence. "Clinically, it has been reported that subjects receiving the drug experience a lowered sex drive and a decrease in the frequency of erotic imagery." Connecticut Department of Correction, *Report of the Depo-Provera Study Group,* p 3 (Hartford, Connecticut, October 4, 1983); see also *State v Christopher,* 133 Ariz 508; 652 P2d 1031 (1982); *Dennis v State,* 13 Md App 564; 284 A2d 256 (1971). However, the drug is not approved by the FDA for suppressing the sex drive in the male, but its experimental use for that purpose is allowed. The drug produces an alphabet of adverse reactions from acne to cancer to weight gain. *Physicians' Desk Reference,* pp 1765, 1766. Long-term toxicology studies in monkeys, dogs, and rats disclose that the drug produces cancer in female organs, although the relevancy of any of those findings with respect to humans has not been established. *Physicians' Desk Reference,* p 1765; *Report of the Depo-Provera Study Group, supra,* p 4.

Some sex offenders in other states have been given the *voluntary* option of participating in a Depo-Provera program as a condition of probation in very limited instances. However, our research reveals that no appellate court in the United States, either state or federal, has ever passed upon or approved either voluntary or mandatory treatment of sex offenders with medroxyprogesterone acetate or Depo-Provera. A witness in *State v Christopher, supra,* characterized Depo-Provera treatment as a "drastic alternative" to behavior modification.

Although Judge Borsos crudely referred to Depo-Provera treatment as "castration by chemical

means", the therapy is neither castration nor sterilization. Nor should Depo-Provera treatment be thought to be within the ambit of numerous cases which discuss sterilization (or sometimes castration) of sex offenders because, in all cases where sterilization is allowed, the sanction is specifically authorized by statute. See, for example, Anno: *Validity of statutes authorizing asexualization or sterilization of criminals or mental defectives,* 53 ALR3d 960. For a discussion of the validity of former Michigan legislation which allowed sterilization of mentally incompetent persons, see *In re Salloum,* 236 Mich 478; 210 NW 498 (1926); *Smith v Wayne Probate Judge,* 231 Mich 409; 204 NW 140 (1925); *Haynes v Lapeer Circuit Judge,* 201 Mich 138; 166 NW 938 (1918). It goes without saying that there is no statutory authorization in Michigan for treating sex offenders with medroxyprogesterone acetate.

Furthermore, even in the few studies undertaken to treat sex offenders with medroxyprogesterone acetate, participation was voluntary. In those cases, the chemical treatment was accompanied by psychotherapy. And, the subjects chosen for the studies were generally chronic, deviant, and dangerous sex offenders.

The originator of the treatment is Dr. Fred S. Berlin of Johns Hopkins Hospital, Baltimore. However, his definitive study, reported in 138:5 American Journal of Psychiatry, pp 601, 601-607 (May, 1981), has been criticized because, of the 20 patients included in the study, nine dropped out of treatment within one year and two others relapsed less than one year after treatment. Berlin & Meinecke, *Treatment of Sex Offenders With Antiandrogenic Medication;* 138:5 American Journal of Psychiatry, p 604 (May, 1981); Letter From Public

Citizen Health Research Group to Connecticut Depo-Provera Task Force, p 5 (October 17, 1983). The Connecticut Department of Correction appointed a study group to consider the use of the drug for male sex offenders in 1983, but the committee rejected the proposal primarily because of the committee's "very real concerns about the safety of this drug". *Report of the Depo-Provera Study Group, supra,* p 8. A generally favorable report of medroxyprogesterone acetate therapy was made by Dr. Pierre Gagne, of Quebec, Canada, but he stressed that treatment be undertaken only voluntarily, accompanied by counseling and with the patient's informed consent. 138:5 American Journal of Psychiatry; Gagne, *Treatment of Sex Offenders With Medroxyprogesterone Acetate,* pp 644-646 (May, 1981).

Michigan authorities cast doubt upon the validity of the condition. *People v Becker,* 349 Mich 476; 84 NW2d 833 (1957), strongly suggested, but did not decide, that sterilization would be an improper condition of probation. A condition of probation requiring defendant to leave the state during probation was contrary to public policy. *People v Baum,* 251 Mich 187; 231 NW 95 (1930). A condition requiring defendant to move from his neighborhood was struck down as without authority of law in *People v Smith,* 252 Mich 4; 232 NW 397 (1930). A condition of probation forbidding defendant to play professional basketball was not a lawful condition of probation. *People v Higgins,* 22 Mich App 479; 177 NW2d 716 (1970).

The Depo-Provera treatment prescribed by the trial judge also fails as a lawful condition of probation because it has not gained acceptance in the medical community as a safe and reliable medical procedure. See *People v Young,* 418 Mich 1; 340

NW2d 805 (1983); *People v Gonzales*, 415 Mich 615; 329 NW2d 743 (1982); *People v Barbara*, 400 Mich 352; 255 NW2d 171 (1977); *People v Morse*, 325 Mich 270; 38 NW2d 322 (1949); *People v Cox*, 85 Mich App 314; 271 NW2d 216 (1978).

There are myriad other problems with the condition, but special mention should be made of the virtual impossibility of performance of the condition. As noted, the use of Depo-Provera to reduce the sexual drive in male sex offenders is experimental only. The medical-psychiatric literature on the topic is limited. The practice is apparently limited to a few institutions. In light of that, the questions left unanswered by Judge Borsos's order are, where is defendant to get the treatment (he's in county jail for at least a year)? Who is to administer this treatment? What if, as defendant alleges, the medicine would be detrimental to his alleged heart and psychiatric conditions? Is defendant entitled to psychotherapy along with the drug treatment, as appears to be the practice in the studies referred to by the trial court?

What about the problem of informed consent? Even mentally incompetent persons, committed under court process, enjoy a greater degree of protection from extraordinary medical procedures. Chapter 6, § 629(3) of the Mental Health Code, dealing with civil immunity for authorizing medical services to wards, provides: "Routine medical services do not include extraordinary procedures. Extraordinary procedures includes *[sic]*, but is not limited to, sterilization, including vasectomy, abortion, organ transplants from the ward to another person, *and experimental treatment.*" MCL 330.1629(3); MSA 14.800(629)(3). (Emphasis added.) Even prison inmates enjoy greater protection. MCL 800.282; MSA 28.1622 limits prescribed drugs

for inmates to those which are "necessary for the health of the person named * * * in [the] permit or prescription". Moreover, drugs may be dispensed to prisoners "only pursuant to the written orders of a practitioner licensed to prescribe in accordance with his professional practice". 1979 AC, R 791.658(2). Even a prisoner volunteering to participate in pharmaceutical research projects must give his informed written consent to the procedures and a statement of consent does not amount to informed consent unless:

"(a) All the terms and conditions of participation in the project, including the nature of the procedure involved, the degree of risk, and all other factors affecting the resident's welfare, are explained to the resident in the presence of an employee of the department.

"(b) The witnessing employee executes a written statement that a full explanation has been made and that the resident has given consent without evidence of coercion or undue influence." 1979 AC, R 791.6633(4), subds (a), (b).

None of the above considerations touch at all on defendant's constitutional objections to the Depo-Provera treatment. Yet the considerations mentioned demonstrate overwhelmingly that the condition of defendant's probation, that he submit to Depo-Provera treatment, is clearly an unlawful condition of probation and invalid under MCL 771.3(4); MSA 28.1133(4).

Since the condition is unlawful, we must next decide an appropriate remedy. Defendant contends that the unlawful condition should be set aside and the balance of the probation sentence (except the one year in jail requirement, which we discuss later) should be sustained. The people argue that resentencing is appropriate.

We reject defendant's contention. Prior to *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), generally only the unlawful condition was vacated. *People v Carl Smith,* 69 Mich App 247, 249; 244 NW2d 433 (1976), observes:

"Several cases dealing with the validity of a portion of an order of probation impliedly indicate that where one condition of probation is found to be invalid, it does not necessarily follow that the whole order is invalid. *People v Peterson,* 62 Mich App 258, 270; 233 NW2d 250 (1975), *People v Becker,* 349 Mich 476; 84 NW2d 833 (1957), and *People v Good,* 287 Mich 110; 282 NW 920 (1938). The trial court's correction of the initial infirm order was valid. See *In re Cramer, supra.*

"Consonant with the above cases, we hold that, where one of the conditions of probation is in violation of statute, the whole order of probation is not thereby invalid. The ordinary remedy, as in the above cases, is remand for entry of a proper order of probation."

However, since *People v Coles, supra,* introduces sentence review into our jurisprudence, it can no longer be argued that, if a condition of probation is unlawful, only that condition is stricken and the balance of the sentence is sustained, where, as here, defendant not only attacks an invalid condition of probation but argues, in addition, that the one-year jail term is an abuse of discretion. Prior to whole sentence review, it was possible for a defendant to appeal and obtain relief from an improper condition of probation, *People v Coles, supra,* pp 531-532, but sentence review now opens the entire sentence to review to consider whether the sentence is excessively severe or excessively lenient. *Coles,* 417 Mich 542-543. By challenging the one-year jail provision, defendant is essentially arguing that the sentencing is excessively severe and he opens the full sentence to appellate review.

It seems clear in this case that defendant has asked for appellate review under *Coles* by challenging the "severity" of the year in jail provision. Having challenged more than an improper condition of probation, defendant opens himself up to appellate review of the entire sentence under *Coles:*

"We next hold that an appellate court shall, upon a defendant's request in an appeal by right or an appeal by leave granted, review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant only if the appellate court finds that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience of the appellate court." 417 Mich 550.

Since defendant challenges his sentence in this appeal, he should not be able to pick and choose the parts of his sentence he wants to attack and the parts he wants to preserve. It is therefore concluded that defendant's sentence is subject to appellate review under *Coles.* Of course, *Coles* is otherwise applicable to this case because this is an appeal "filed after the date of this decision". 417 Mich 551.

The standard of review of a sentence under *Coles* is whether "the trial court, in imposing sentence, abused its discretion to the extent that it shocks the conscience of the appellate court". 417 Mich 550. We can understand, on the one hand, defendant's point that there was no abuse of discretion. After all, at the time defendant was sentenced, first-degree criminal sexual conduct was a probationable offense.[1] (It is not any longer. 1982

---

[1] Defendants convicted of first-degree criminal sexual conduct have been placed on probation. *People v Mock*, 108 Mich App 384; 310 NW2d 390 (1981) (five years probation, $100 costs). Others have been sentenced to extensive terms of imprisonment. See, for example,

PA 470, approved December 30, 1982, makes criminal sexual conduct in the first degree nonprobationable. MCL 771.1; MSA 28.1131. However, the statute probably cannot be applied retroactively to defendant's offense. See *People v Moon,* 125 Mich App 773, 780, fn 6; 337 NW2d 293 [1983]). In addition, Judge Borsos had before him many considerations which, if believed, could have led him to believe that probation was appropriate. Among those factors are defendant's alleged history of medical and sexual abuse by his stepfather and stepbrother, defendant's medical condition, the inordinate public exposure and damage to defendant's name, reputation and business, the risk of sexual assault in prison, and the body of psychiatric evidence which holds that sexual abuse of children has serious emotional and psychological components.

However, probation in this case shocks our conscience because it is so significantly disproportionate to the sentences generally imposed upon similarly situated defendants. The Supreme Court in *Coles* was concerned not only with excessively severe or excessively lenient sentences but with significantly disproportionate sentences. The Court said:

"Another type of sentence alleged to constitute an injustice is the sentence which is significantly disproportionate to the sentences generally imposed upon similarly situated defendants who have committed similar crimes. For any one offense there is often a wide range of sentences available, and sentencing judges have demonstrated a significant variety of attitudes when it comes to deciding what constitutes an appropriate sentence. Thus, it is possible to find two defendants

*People v Barfield,* 411 Mich 700; 311 NW2d 724 (1981) (life); *People v Roberson,* 90 Mich App 196; 282 NW2d 280 (1979) (70-110 years); *People v Price,* 112 Mich App 791; 317 NW2d 249 (1982) (50-75 years).

within the same prison system who have similar backgrounds, who were convicted of the same crime under similar facts and circumstances, and yet one is serving a disproportionately longer term of imprisonment. Such disparity in sentences, it is argued, does not merely result from permissible factors such as the culpability and background of the defendants; rather, it often arises from impermissible considerations such as the race of the defendant, his economic status, or the personal bias and attitude of the individual sentencing judge. Increased uniformity in sentencing similarly situated defendants is said to be in keeping with our constitutional concept of a unified judiciary in this state." 417 Mich 545.

The probation sentence in this case is certainly disproportionate to the usual sentence given in criminal sexual conduct cases. In CSC I offenses involving defendants' children or stepchildren, the usual sentences range from life to any term of years. In CSC I cases not involving defendants' children or stepchildren, the sentences similarly range from life to a term of years. The presentence report in this case recommended a 15-year minimum.

In light of the above, the Court finds that the probation sentence in this case was an abuse of discretion.

*Coles* also moots defendant's contention that resentencing would constitute double jeopardy. The specific remedy fashioned by the Court in *Coles* is precisely resentencing.

"If under this standard the appellate court deems that resentencing is warranted, the appellate court shall, after specifically stating its reasons for such action, remand the case to the trial court for resentencing. The trial court then may, upon resentencing, raise or lower the term of the defendant's punishment in

light of the concerns expressed by the appellate court."
417 Mich 550-551.

We conclude that, under *Coles,* imposition of a
greater sentence on resentencing under the Su-
preme Court's authorization for sentence review
would not violate defendant's protection against
double jeopardy. See *United States v Di Francesco,*
449 US 117; 101 S Ct 426; 66 L Ed 2d 328 (1980);
see also *United States v Wilson,* 420 US 332; 95 S
Ct 1013; 43 L Ed 2d 232 (1975); *United States v
Jenkins,* 420 US 358; 95 S Ct 1006; 43 L Ed 2d 250
(1975), and *Serfass v United States,* 420 US 377; 95
S Ct 1055; 43 L Ed 2d 265 (1975).

On remand, consistent with *Coles,* the case will
be assigned to a judge to be appointed by the State
Court Administrator. *Coles,* 417 Mich 536.

With respect to the motions to disqualify Judge
Borsos, GCR 1963, 912.3(c)(1) provides:

"The challenged judge must decide the motion. If the
challenged judge denies the motion,
"(1) in a court having two or more judges, the chal-
lenged judge *shall on request refer the motion to the
chief judge, who shall decide the motion de novo."*
(Emphasis added.)

By its plain terms, the subrule is mandatory.

In *Jones v Jones,* 132 Mich App 497; 347 NW2d
756 (1984), we held that the trial court erred by
entering a judgment of divorce without first refer-
ring defendant's motion for disqualification to an-
other judge for *de novo* review under subrule
912.3(c). In that case, the parties agreed to a
property settlement, but the trial court instructed
plaintiff's attorney to draft a judgment which con-
tained substantial variations from the parties'
agreed settlement. Defendant counsel moved to

disqualify the judge, but the court denied the motion and entered judgment of divorce, which included terms not agreed to by the parties. This Court held that the trial court erred by incorporating terms in the judgment which were not agreed to by the parties and remanded for further proceedings. The Court also held that, even if defendant's motion to disqualify the judge was untimely, the trial court should have referred the disqualification motion to another judge. The Court said:

"While in some circumstances it might not be improper for the trial court to continue with the proceedings prior to another judge's ruling on the disqualification motion, this was not such a case. Defendant's motion, even if deemed untimely, was not overly late. Moreover, the motion was not obviously frivolous, and nothing appears on the record which suggests that delaying entry of the judgment of divorce would have caused either the court or the parties any substantial inconvenience. On remand, prior to further proceedings on the merits of this case, defendant's motion for disqualification shall be handled in accord with GCR 1963, 912.3(c)(1)." 132 Mich App 503.

In *People v McDonald,* 97 Mich App 425; 296 NW2d 53 (1980), *vacated on other grounds* (defendant's death pending appeal), 411 Mich 870 (1981), defendant moved to disqualify the trial court from conducting a probation revocation hearing, but the court denied the motion and held that referral of the motion to the chief judge was unnecessary. The Court held that was not reversible error because defense counsel's motion to disqualify the judge was late and his request to refer the disqualification motion to another judge was made well after the hearing was well in progress. Nevertheless, the Court was concerned that the qualifica-

tion of the trial court be established and so remanded for a hearing on the motion to disqualify before another judge. The Court said:

"Because we believe a party challenging the qualifications of a judge has a right, under present GCR 1963, 912, to a rehearing by another judge, this case is remanded to the chief judge of the Recorder's Court for a hearing by another judge to be assigned by the court administrator on the motion to disqualify Judge Gillis. If it is determined that Judge Gillis was disqualified to conduct the probation revocation hearing, a new hearing is required; but if it is determined that he was not disqualified, the revocation and sentence will stand." 97 Mich App 434.

In *McDonald,* the Court also suggested a procedure for handling motions to disqualify a judge.

"Whenever a challenged judge has denied a disqualification motion and a request for a hearing before another judge comes after a trial or hearing has started the challenged judge should have the option of proceeding with the trial or hearing unless a chief judge or a higher court orders that the trial or hearing be interrupted or delayed so that the disqualification motion may be considered by another judge before the trial or hearing is concluded. If the trial or hearing is continued the disqualification proceedings before another judge would be either rendered moot as untimely or conducted afterwards if so ordered. If conducted afterwards and the challenged judge is found to be disqualified, a new trial or new hearing could be held." 97 Mich App 433-434.

The *McDonald* Court suggested that procedure "to maintain the efficiency of our courts operating with a court rule that imposes no time limit on requests that disqualification motions, denied by a challenged judge, be heard by another judge". 97

Mich App 434. In this case, however, the assistant prosecutor's motions to disqualify Judge Borsos and to refer the disqualification to another judge were both timely. Judge Borsos was not assigned to the case until January 25, 1984. The next day, Judge Borsos rendered an opinion on his own motion, finding himself not to be disqualified. He set sentencing for January 30, 1984. On that date, just five days after Judge Borsos was assigned to the case, the prosecutor filed his motion to disqualify Judge Borsos. As soon as Judge Borsos denied that motion, the prosecutor immediately filed a written motion to refer the disqualification motion to the presiding judge. Judge Borsos denied the motion on the grounds that "I'm not satisfied that it requires referral to the chief judge at this time".

In light of the facts that the motion to disqualify was filed promptly and timely and that the motion to refer the disqualification to the chief judge was filed immediately upon denial of the request for disqualification, it is doubtful that the procedure in *People v McDonald* should apply here. Instead, the holding in *Jones v Jones, supra,* seems more applicable; Judge Borsos should have referred the disqualification motion to another judge for a *de novo* decision before proceeding further. Defendant would not have been prejudiced because he too sought an adjournment of sentencing. After the weekend revelation of the possibility that Judge Borsos would require Depo-Provera treatment, defendant wanted a five- to seven-day adjournment so he could coolly assess with his attorneys and psychiatrist the possibility of withdrawing his pleas. Judge Borsos denied that motion.

If Judge Borsos was disqualified to sentence defendant, the sentence is void. *In re Hudson Lumber Co,* 301 Mich 77; 3 NW2d 17 (1942); *San-*

*dusky Grain Co v Sanalac Circuit Judge,* 184 Mich 126; 150 NW 329 (1915); *People v McDonald, supra.* Although no *de novo* determination has been made whether Judge Borsos is disqualified or not, he is removed from the case. Judge Borsos joined in the circuit court bench's grievance against the assistant prosecuting attorney. He imposed an illegal condition of probation. At this point, whether or not he was disqualified originally, the interests of justice require that he be removed from the case to avoid even the appearance of impropriety.

In light of our conclusion that the cause should be remanded for resentencing, we deal only briefly with other issues raised.

Defendant's challenge to the one-year jail condition of probation is moot in light of our decision to remand. Nevertheless, we note that the condition is specifically authorized by MCL 771.3(2)(a); MSA 28.1133(2)(a). Even if the jail sentence might be said to impede defendant's rehabilitation, it does address the other aims of sentencing: punishment of the wrongdoer, protection of society, and deterrence. *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972); *People v Coles, supra,* 417 Mich 550.

We reject defendant's claim that no greater sentence can be imposed on remand than the sentence imposed by Judge Fitzgerald because of the assistant prosecutor's misconduct in the case. Judge Fitzgerald did not impose a sentence. We find no misconduct on the assistant prosecutor's part that would require that the discretion of the sentencing judge be limited on resentencing.

Finally, we decline to decide whether the prosecution can appeal the sentence in this case. The question of whether the people can appeal a sen-

tence is now before the Supreme Court in *People v Robinson,* 118 Mich App 220; 324 NW2d 795 (1982), *lv gtd* 417 Mich 884 (1983), and in *People v Cooke,* 113 Mich App 272; 317 NW2d 594 (1982), *lv den* 414 Mich 874 (1982). Both cases were argued before the Supreme Court in June, 1983. In *People v Coles,* the Supreme Court expressly reserved decision on the question of the prosecutor's right to appeal a sentence. There the Supreme Court said:

"None of the cases before us are appeals which were initiated by the prosecutor. For that reason, and for the reasons that we have granted leave to appeal in several other cases involving the general issue of the prosecutor's right to appeal, we take no position at this time regarding the prosecutor's right to appeal the length of a defendant's sentence. We recognize that there are valid arguments both in favor of and against the allowance of prosecutor-initiated appeals of sentences, but we will reserve decision on this issue for a more appropriate time." 417 Mich 551.

In light of the fact that the question of the prosecution's right to appeal a sentence is now before the Supreme Court and was expressly reserved by it in *Coles* for decision, it would be inappropriate for this Court to presume to decide the issue in this case. Nevertheless, we acknowledge with thanks the helpful and persuasive brief of the amicus curiae on this issue.

Defendant's conviction is affirmed. His sentence is set aside on authority of *People v Coles, supra,* and the case is remanded for resentencing by a judge to be appointed by the State Court Administrator. In view of all the circumstances in this case and in order that the interests of justice be better served, the appointed judge shall not be from Kalamazoo County. An updated presentence report

shall be prepared and the sentencing guidelines shall be applied pursuant to Supreme Court Administrative Order 1984-1, 418 Mich xxiv. Defendant shall be given credit on his sentence for time served in jail, both before conviction and under the original sentence. MCL 769.11a; MSA 28.1083(1).

Lastly, we emphasize that we intend the judge on resentencing to exercise the fullest range of discretion available under law, limited only by our holding here that probation was not an appropriate sentence *in this case.*