Roger A. GAUNTLETT,
Petitioner–Appellant,

v.

Frank J. KELLEY, Attorney General of the State of Michigan,
Respondent–Appellee.

No. 87–1488.

United States Court of Appeals,
Sixth Circuit.

Cause Argued Jan. 29, 1988.

Decided June 8, 1988.

Rehearing Denied Aug. 12, 1988.

Mary E. Delehanty, William L. Fette, Gemrich, Moser, Dombrowski, Bowser & Fette, Kalamazoo, Mich., David A. Dodge, Catchick & Dodge, Grand Rapids, Mich., Andrew L. Frey (argued), Washington, D.C., for petitioner-appellant.

Michael H. Dzialowski (argued), Asst. Pros. Atty., Kalamazoo, Mich., Thomas A. Kulick, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for respondent-appellee.

Before LIVELY, JONES and BOGGS, Circuit Judges.

LIVELY, Circuit Judge.

This is a habeas corpus action in which the petitioner Roger Gauntlett claims that state courts violated due process and denied his right to be free of double jeopardy by imposing a harsher sentence after vacating a more lenient one. The district court denied relief, and we affirm.

I.

The district court recounted the state court proceedings in detail, *Gauntlett v. Kelley,* 658 F.Supp. 1483 (W.D.Mich.1987), and we will recite only those facts required to explain our decision.

A.

In a plea bargain the petitioner pled no contest in a Michigan circuit court to one count of criminal sexual conduct in exchange for an agreement to dismiss four other similar charges. At a presentence conference the trial judge "proposed, or announced his intention to impose, a [five-year] probationary sentence" with four conditions. *Id.* at 1485–86. After the prosecutor ignored the judge's admonition not to make the proposal public, local media organs publicized the case and the proposed sentence, resulting in general public interest in the case. The judge who had made the proposal disqualified himself, and the case was assigned eventually to Judge Borsos of the same circuit after a second judge had disqualified himself. The prosecutor also withdrew and was replaced.

Judge Borsos denied petitioner's motion to impose the sentence proposed by the first judge, or to impose a sentence that would be no harsher than the proposed sentence. When Judge Borsos revealed his intention to propose a sentence which the petitioner considered harsher, petitioner requested Judge Borsos to disqualify himself. The prosecutor also requested the

judge to disqualify himself and when this motion was denied, filed a written motion for Judge Borsos to refer the disqualification issue to the chief judge of the circuit court. Judge Borsos denied this motion as well, and sentenced the petitioner to five years probation, with some conditions that were different from those proposed by the first judge. One of the new conditions was that during the five-year probationary period the petitioner submit to "chemical castration" by a series of treatments with the drug identified as Depo-Provera. A condition that one year of probation be served in the county jail was included in both the original proposed sentence and in the actual sentence of Judge Borsos.

### B.

Gauntlett appealed to the Michigan Court of Appeals, contending that the "chemical castration" condition and the requirement that he serve one year of his probation in the county jail were unlawful. The Michigan Court of Appeals held that the "chemical castration" condition was unlawful, but rejected Gauntlett's request that this provision be stricken and that the remainder of the sentence be approved. The court held that since Gauntlett had challenged other provisions of the sentence as well, he had opened the entire sentence to appellate review. The case was remanded for resentencing by a different judge, with directions concerning resentencing. *People v. Gauntlett*, 134 Mich.App. 737, 352 N.W.2d 310 (1984). The petitioner then appealed to the Supreme Court of Michigan which modified the court of appeals decision by removing all directions concerning resentencing and holding that it was premature to make an evaluation of the rest of the sentence. The court remanded to the circuit court "for resentencing by the visiting judge assigned to do so without further directions." *People v. Gauntlett*, 419 Mich. 909, 353 N.W.2d 463 (1984). Thus, the Supreme Court upheld that portion of the court of appeals decision that vacated the entire sentence.

### C.

The case was then assigned to Judge Warren, from a different Michigan circuit, who conducted a hearing at which he considered several motions by the petitioner, including one asserting that imposition of an enhanced sentence would violate his due process rights. Denying these motions, Judge Warren sentenced Gauntlett to a term of five to fifteen years imprisonment with credit for time served. The Michigan Court of Appeals rejected the petitioner's due process and double jeopardy challenges to the sentence imposed by Judge Warren, holding that the sentence of Judge Borsos was invalid and void, that it legally never existed, and could not provide "a benchmark for comparing and attacking Judge Warren's sentence." *People v. Gauntlett*, 152 Mich.App. 397, 401, 394 N.W.2d 437 (1986). The Michigan Supreme Court denied leave to appeal and the petitioner filed this habeas corpus action.

### II.

Gauntlett raised three issues in his habeas petition: (1) that prosecutorial misconduct deprived him of his due process right to a fundamentally fair sentence; (2) that Judge Warren's sentence deprived him of due process because it was harsher than that imposed by Judge Borsos; and (3) that the State's decision to resentence him after he had served part of the original sentence violated the prohibition against double jeopardy. 658 F.Supp. at 1485. While disagreeing with some of the legal conclusions of the Michigan Court of Appeals, the district court rejected all of Gauntlett's claims. The district court found that the prosecutorial misconduct—the "leaking" of the first judge's proposed sentence—was not so egregious as to have affected the entire sentencing procedure and deny the petitioner of fundamental fairness. Turning to the second due process argument, the court found that there was no evidence that Judge Warren acted with actual vindictiveness in sentencing Gauntlett, and that the events surrounding resentencing did not invoke a presumption of vindictiveness. The district court denied the double

jeopardy claim upon concluding that a person may be given a more severe sentence following vacation of an original sentence, even though he has served a part of the vacated sentence.

### III.

Gauntlett raises the same three issues on appeal. At oral argument his counsel contended that Gauntlett received no remedy for the due process violation caused by the prosecutor's misconduct because the order for resentencing deprived him of the sentence he would have received but for that misconduct. Counsel requested this court to direct the imposition of a sentence "that in all probability the first judge would have imposed" but for the misconduct. The State responded that Gauntlett had no right to a "non sentence" and that he received the proper remedy when Judge Borsos's sentence was found to be illegal—resentencing before a different judge with credit for time served. The State denied that there had been prosecutorial misconduct.

### A.

■ There can be no doubt that the first prosecutor's failure to abide by the judge's admonition set in motion a most regrettable chain of events. However, to the extent that his actions may have constituted prosecutorial misconduct, it did not rise to the level of a constitutional violation. Sitting en banc in *Angel v. Overberg,* 682 F.2d 605 (6th Cir.1982), this court stated the requirements for habeas relief where there is a claim of prosecutorial misconduct. The claim in *Angel* related to a prosecutor's closing argument to a jury, but the standard adopted there applies equally to the present case. We wrote:

> The proper legal standard we are to utilize in evaluating alleged misconduct by a state prosecutor is relatively clear. The prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel. *Donnelly v. De-Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Before habeas

relief is granted, the prosecutor's statements must be so egregious as to render the trial fundamentally unfair. *Id.* This determination is to be made by evaluating the totality of the circumstances surrounding each individual case. *Hayton v. Egeler,* 555 F.2d 599, 604 (6th Cir.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1977).

682 F.2d at 607–08.

Examining the totality of circumstances surrounding the prosecutor's conduct in this case, we first note that no sentence had been imposed when the prosecutor acted. The judge had proposed a sentence but had then adjourned the hearing at Gauntlett's request without actually pronouncing sentence. It is especially important to note the indefinite nature of one of the conditions of the proposed sentence as evidenced by the reason for the adjournment—to allow Gauntlett time to determine whether he could make financial arrangements required to meet that condition. While the prosecutor's actions which led to the judge's recusal were indefensible, in view of the fact that no sentencing actually occurred before recusal, we are convinced that the later proceedings were not rendered fundamentally unfair. Gauntlett had neither a legal right to receive the proposed sentence, nor a legitimate expectation that it would be the final sentence.

### B.

■ The petitioner also argues that the "public uproar" against a probationary sentence that followed the prosecutor's divulgence of the proposed sentence tainted all subsequent proceedings. The argument here appears to be that both Judge Borsos and Judge Warren were influenced to impose a harsher sentence by a public reaction. Of course, Judge Borsos actually imposed a probationary sentence of the same duration suggested or proposed by the first judge. He substituted a new condition for one originally proposed, but that condition was found to be illegal, and this holding led to the order vacating the sentence. As to Judge Warren, he gave specific reasons for the sentence he imposed and stated on the

record that he had read none of the mail concerning the case that was addressed to the court. There was no showing that the proceedings following recusal of the first judge lacked fundamental fairness.

## IV.

### A.

■ The petitioner also argues that he was denied due process when Judge Warren imposed a more severe sentence than that imposed by Judge Borsos. We are bound by the determination of the Michigan Court of Appeals that Gauntlett's appeal of a portion of his first sentence opened the entire sentence for review, and that of the Michigan Supreme Court that he was to be sentenced anew without any directions. These are interpretations of Michigan appellate practice. Our only concern is whether the petitioner's constitutional rights were violated by the manner in which these directions were carried out. We conclude there was no due process violation.

■ In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that the Double Jeopardy Clause does not absolutely prohibit a harsher sentence upon reconviction following a successful appeal. *Accord Colten v. Kentucky*, 407 U.S. 104, 119, 92 S.Ct. 1953, 1961, 32 L.Ed.2d 584 (1972). However, if vindictiveness plays any part in the decision to impose a more severe sentence following a successful appeal, there is a due process violation. *Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080. There is a presumption of vindictiveness if the same sentencing authority imposes a greater sentence, unless the reasons for doing so "affirmatively appear." *Id.* at 726, 89 S.Ct. at 2081. In *Pearce*, the Court stated that the reasons for imposing a more severe sentence "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* In *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 184 (1986), however, the Court

relaxed this requirement and upheld a more severe sentence where the resentencing judge relied on "objective information ... justifying the increased sentence," quoting *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed. 2d 74 (1982). This is true even though the information did not relate to conduct of the defendant that occurred after the initial sentence. 475 U.S. at 143–44, 106 S.Ct. at 981–82. *Pearce* requires no more than that "the second sentencer provide[s] an on-the-record, wholly logical, nonvindictive reason for the sentence." *Id.* at 140, 106 S.Ct. at 980.

Although *Pearce* and *McCullough* relate to resentencing following a successful appeal of a conviction, their reasoning applies equally to resentencing following a successful appeal of a sentence. The principal objection to permitting a more severe punishment following a successful appeal is based on the danger that defendants with meritorious appellate arguments will be inhibited from exercising their right to appeal. However, the Supreme Court has upheld the "constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they may have on the right to appeal." *Chaffin v. Stynchcombe*, 412 U.S. 17, 29, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714 (1973).

### B.

■ The *Pearce* presumption of vindictiveness does not apply where the second sentencer "has no motivation to engage in self-vindication," quoting *Chaffin*, 412 U.S. at 27, 93 S.Ct. at 1983, and where the possibility of vindictiveness is highly speculative. *McCullough*, 475 U.S. at 139, 106 S.Ct. at 979. Further, when the sentences are imposed by different sentencers, the presumption does not apply because there has been no real "increase" in the sentence. *Id.* at 140, 106 S.Ct. at 980. See also *United States v. Lippert*, 740 F.2d 457, 460 (6th Cir.1984), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1200, 84 L.Ed.2d 344 (1985) ("[W]here a different judge or a different jury impose a harsher sentence after an earlier convic-

tion has been set aside, the possibility of vindictiveness is remote.").

We conclude that the *Pearce* presumption does not apply to the facts of this case. A different judge from a different circuit imposed the more severe sentence. He had no prior connection with the case and "no motive for self-vindication." Before pronouncing sentence Judge Warren reviewed Michigan's nonmandatory sentencing guidelines, the seriousness of the offense, the effect on the victim, and the petitioner's history, in addition to the protection of society, the deterrent effect of the sentence and the probability of rehabilitation of the offender. There is nothing in the record of proceedings before Judge Warren that raises the spectre of vindictiveness, and thus the more severe sentence did not deprive Gauntlett of due process of law.

## V.

### A.

Prior to the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the petitioner's double jeopardy arguments would have carried more force. *DiFrancesco* concerned the constitutionality of 18 U.S.C. § 3576 which permits the government to appeal the sentence imposed upon a "dangerous special offender." In concluding that this statute does not violate the Double Jeopardy Clause of the Fifth Amendment, the Court engaged in a lengthy review of its treatment of double jeopardy. The Court emphasized the particular significance of an acquittal for double jeopardy purposes and concluded that "the pronouncement of sentence has never carried the finality that attaches to an acquittal." 449 U.S. at 133, 101 S.Ct. at 435. Thus, "[t]he double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence." *Id.* at 136, 101 S.Ct. at 437. The Court added that the prohibition against double jeopardy "does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137, 101 S.Ct. at 437. The Court cited *Pearce* and *Bozza*

*v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), as demonstrating that "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." 449 U.S. at 137, 101 S.Ct. at 438.

Although *DiFrancesco* dealt with the government's right to appeal sentences, the courts have applied its reasoning concerning finality to situations where the defendant has successfully appealed. In *United States v. Bello*, 767 F.2d 1065 (4th Cir. 1985), the court applied the reasoning of *DiFrancesco* to find no double jeopardy violation where a more severe resentence on a remaining count followed the defendant's successful appeal of convictions for lesser included offenses. The key to the double jeopardy question where an increased sentence is imposed following a successful appeal of either a conviction or a sentence is the defendant's legitimate expectation of finality in the first sentence. A defendant who challenges a sentence on appeal "has no reasonable expectation of finality at the time he begins to serve his sentence." *United States v. Arrellano-Rios*, 799 F.2d 520, 523–24 (9th Cir.1986) (citation omitted).

The significance of the fact that the defendant is the one challenging the first sentence was highlighted in *United States v. Colunga*, 812 F.2d 196, 198 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987):

Colunga had no reasonable expectation of finality in the original sentence imposed on either count, since he had himself sought to nullify the sentencing plan by overturning one of the two convictions. In *North Carolina v. Pearce*, 395 U.S. 711, 720–21, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969), the Court noted that double jeopardy does not preclude a sentencing authority from, upon a defendant's reconviction following a successful appeal, imposing "whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction." The rationale for this "well-established part of our constitutional jurisprudence" is "that the original conviction has, at the

defendant's behest, been wholly nullified and the slate wiped clean." *Id.* at 721, 89 S.Ct. at 2078. *See also Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 354, 88 L.Ed.2d 183 (1985) (A resentencing after a successful appeal intrudes even less on the values protected by double jeopardy than does a resentencing following retrial, as in *Pearce* ).

### B.

We now examine the reasonableness of Gauntlett's expectation of finality in his first sentence. It was he, not the state, who challenged the legality of Judge Borsos's sentence. Under Michigan law, having challenged more than the condition of probation found to be improper, Gauntlett opened the entire sentence to review. And, most significantly, the Michigan Supreme Court has held that when a defendant successfully challenges a sentence and the appellate court remands for sentencing, "[t]he trial court then may, upon resentencing, raise or lower the term of the defendant's punishment in light of the concerns expressed by the appellate court." *People v. Coles,* 417 Mich. 523, 551, 339 N.W.2d 440 (1983). Thus, Gauntlett was on notice that his appeal could lead to a more severe sentence, a factor to be considered in assessing the reasonableness of an expectation of finality. See *United States v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987) ("... a defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased."); *United States v. Crawford,* 769 F.2d 253, 257 (5th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986) (A defendant has no expectation of finality in a sentence where he is charged with knowledge that it is subject to correction under a rule of criminal procedure.).

At least one other fact militates against a finding that Gauntlett had a legitimate expectation of finality in the first sentence. Judge Borsos amended his original probation order before an appeal was taken. The amending order of February 17, 1984, added the following language:

It was the intent of this Court that Depo-Provera medication be an essential and an integral part of the probationary order in order to give reasonable assurance that throughout the five year probationary term that defendant would not be a danger to young children. It was *not* the intent of this Court to give probation with jail without this medical protection to the public.

If, for any reason, it is not possible to carry out a course of treatment with Depo–Provera whether because of [conditions listed], or if some appellate court should determine that such a course of treatment making use of Depo–Provera to be [sic] inappropriate, unlawful, excessive, not within the trial court's power to give, or not a proper term of probation, or shall set it aside for any other reason; then the entire probation shall be set aside for failure of the condition on which it was based and the defendant then be resentenced by this judge, his successor or by some other judge appointed to do so.

Thus, Gauntlett was on notice that the very term of probation that he attacked as unlawful was considered by the sentencing judge to be critical to the sentence of probation. This further weakens his claim of a legitimate expectation of finality in that sentence.

The judgment of the district court is affirmed.