[No. D037675. Fourth Dist., Div. One. Aug. 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN FOSTER, Defendant and Appellant.

**COUNSEL**

Elizabeth A. Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Elizabeth A. Hartwig and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McINTYRE, J.**—Steven Foster appeals from a judgment sentencing him to 30 years imprisonment and to undergo hormone suppression treatment upon

parole under Penal Code section 645 (all statutory references are to the Penal Code). Foster contends the portion of the judgment imposing hormone suppression treatment must be reversed because this sentence is grossly disproportionate and violates state and federal constitutional prohibitions against cruel and unusual punishment. Because appellate review of this claim is precluded under the terms of Foster's negotiated plea agreement, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Foster sexually abused the 12-year-old daughter of his girlfriend over a six-month period, and was charged with 32 counts of forcible lewd acts upon a child, five counts of aggravated sexual assault against a child, two counts of assault with a deadly weapon likely to cause great bodily injury, and two counts of felony child abuse.

On June 6, 2000, pursuant to a written plea agreement, Foster agreed to plead guilty to five counts of forcible lewd acts upon a child in exchange for a stipulated prison term of 30 years and the dismissal of the remaining counts—five of which carried sentences of 15 years to life. Foster acknowledged in the plea agreement that his attorney had explained the consequences of his plea, which expressly included "Possible/Mandatory hormone suppression treatment." He also initialed a waiver of appeal rights that stated: "I give up my right to appeal from the judgment in this case based on . . . any sentence within the terms herein specified." The agreement also contains: (1) a statement signed by Foster's attorney affirming that he read and explained the contents of the plea agreement to Foster, discussed the charges and all possible defenses with him, as well as the consequences of the plea, and personally observed Foster read and initial each item to "acknowledge his[] understanding and waivers," and (2) the judge's signature and his findings that Foster "understands and voluntarily and intelligently waives his[] constitutional rights; the defendant's plea and admissions are freely and voluntarily made; [and] the defendant understands the nature of the charges and the consequences of the pleas and admissions." In addition, at the hearing on the change of plea, Foster affirmed he had reviewed the plea agreement with his attorney, understood he would be giving up his constitutional rights, and also understood his plea "would subject [him] to registration and to mandatory chemical treatment upon release on parole."

On August 15, 2000, the trial court exercised its discretion under section 645, subdivision (a) and sentenced Foster to undergo hormone suppression treatment upon parole in addition to the other punishment of 30 years'

imprisonment. In doing so, the court noted: "Mr. Foster was in a position of trust. The acts were substantial. They are cruel and they are predatory in nature, and I do believe that this type of treatment is in the interest of justice under these circumstances."

## DISCUSSION

█ Foster agreed to plead guilty to specified charges in exchange for a particular sentence and the dismissal of other charges, acknowledged he understood the consequences of his plea, including "Possible/Mandatory hormone suppression treatment," and agreed to waive the right to appeal "any sentence within the terms herein specified." Under these circumstances, he is precluded from appealing the portion of his sentence imposing hormone suppression treatment upon parole. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 79-89 [51 Cal.Rptr.2d 851, 913 P.2d 1061][defendant who enters a negotiated plea agreement specifying the sentence and containing a waiver of the right to appeal the sentence cannot appeal on the ground that the sentence imposed is disproportionate and thus cruel and unusual]; see also *People v. Nguyen* (1993) 13 Cal.App.4th 114, 120-122 [16 Cal.Rptr.2d 490].) In other words, having bargained for a 30-year sentence that included the possible imposition of hormone suppression treatment in exchange for the dismissal of myriad serious felony charges, Foster cannot then maintain on appeal that such treatment cannot be imposed because it would violate prohibitions against cruel and unusual punishment. To do so would be to have his cake and eat it too.

Foster contends his cruel and unusual punishment claim is cognizable on appeal because he never waived his right to appellate review of the trial court's exercise of discretion under section 645, subdivision (a). This mischaracterizes his position in this case, which is that the trial court *could not* exercise its discretion to impose hormone suppression treatment upon Foster's parole because such is cruel and unusual. The time to have taken this position, however, was before entering the plea agreement that expressly included such punishment as a possible consequence and contained a waiver of the right to appeal any sentence within its terms. Moreover, given the validly executed plea agreement and waiver form and the acknowledgments contained therein, Foster's waiver of the right to appeal is enforceable even though the court did not specifically admonish Foster that he would be giving up his appellate rights. (*People v. Panizzon, supra,* 13 Cal.4th at pp. 83-84.)

Foster also contends his claim is cognizable on appeal because the court's imposition of hormone suppression treatment upon parole, which was ordered more than a month after the 30-year prison term was imposed, (1) was

a future error outside his contemplation and knowledge at the time his waiver was made, and (2) constitutes an unauthorized sentence that can be corrected on appeal because it is disproportionate and cruel and unusual. We disagree on both counts. First, although the court sentenced Foster to undergo hormone suppression treatment upon parole after Foster entered into the plea agreement, this component of the sentence was specifically listed as a possible consequence of the plea and the court admonished Foster of such. Thus, it "cannot fairly be characterized as falling outside of [Foster's] contemplation and knowledge when the waiver was made." (*People v. Panizzon, supra,* 13 Cal.4th at p. 86.) Second, the Supreme Court in *Panizzon* rejected the defendant's contention that his disproportionate, cruel and unusual punishment claim was cognizable under an unauthorized sentence theory, because the sentence imposed was negotiated as part of the plea agreement and did not exceed the statutory maximum. (*Id.* at p. 88.) Similarly, the possible imposition of hormone suppression treatment upon parole was part of Foster's negotiated plea agreement and did not exceed or run afoul of section 645. Thus, it is not an unauthorized sentence.

The dissent maintains that such sentence was unauthorized because section 645, subdivision (a) does not authorize the court to impose hormone suppression treatment upon parole at sentencing; rather, it authorizes such treatment only when the Board of Prison Terms, in establishing conditions of parole shortly before a prisoner's release, deems it to be appropriate and then petitions the court for approval of the imposition of such condition. The statute does not provide for this procedure, however. The dissent proceeds on the premise that section 645, subdivision (a) is ambiguous, which is not the case. Indeed, the statute makes clear that hormone suppression treatment upon parole may be imposed by the court in its discretion "in addition to *any other punishment* prescribed for that offense." (*Ibid.*, italics added.) Such treatment is not a mere condition of parole, the imposition of which is committed to the discretion of the Board of Prison Terms in the first instance. Under the terms of section 645, subdivision (a), such treatment is punishment to be imposed in the trial court's discretion as part of a defendant's sentence at the time of sentencing. Similarly, where the defendant has incurred a second conviction of the enumerated sex offenses, subdivision (b) of section 645 provides that he shall undergo hormone suppression treatment upon parole "in addition to *any other punishment* prescribed for that offense" (italics added)—i.e., as with subdivision (a), such treatment is punishment imposed as part of the defendant's sentence. In contrast, section 3053.5, cited by the dissent, specifically refers to requiring abstinence from alcohol for certain section 290 sex offenders as a "condition of parole," not as punishment. In sum, under the plain meaning of both subdivisions (a) and (b) of section 645, hormone suppression treatment is not a mere condition of

parole; it is a form of punishment, the imposition of which is part of the defendant's sentence.

Finally, although Foster states in his opening brief that the issue presented in his appeal does not challenge the validity of the plea, but only the sentence, and thus, a certificate of probable cause is not required, he is incorrect. Because Foster seeks to challenge the constitutionality of a portion of his sentence that was clearly contemplated in his plea agreement, it was incumbent upon him to seek and obtain a probable cause certificate. (*People v. Panizzon, supra,* 13 Cal.4th at pp. 77-79.) However, the issue is moot, since we dispose of the appeal on the ground of waiver. (*Id.* at p. 79.)

DISPOSITION

The judgment is affirmed.

McConnell, J., concurred.

**McDONALD, Acting P. J.,** Dissenting.—I interpret Penal Code section 645, subdivision (a)[1] to authorize the Board of Prison Terms (BPT) in the normal course of its imposition of parole conditions to include medroxyprogesterone acetate (MPA) treatment[2] as a parole condition, subject to prior court approval;[3] it does not authorize a trial court at sentencing to impose MPA treatment as a parole condition. Therefore, I believe the trial court imposed an unauthorized sentence by ordering Foster to undergo section 645 MPA treatment on his parole release.

A

Section 645 was enacted in 1996 and states:

"(a) Any person guilty of a first conviction of any offense specified in subdivision (c), where the victim has not attained 13 years of age, may, upon

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] MPA treatment on males generally has the effect of lowering their testosterone hormone levels, resulting in reduced sexual urges. (*People v. Gauntlett* (1984) 134 Mich.App. 737 [352 N.W.2d 310, 314-315]; Gimino, *Mandatory Chemical Castration for Perpetrators of Sex Offenses Against Children: Following California's Lead* (1997) 25 Pepperdine L.Rev. 67, 73-75.) MPA treatment is commonly referred to as hormone suppression treatment or "chemical castration." (Gimino, *supra,* at pp. 74-75; *Gauntlett, supra,* at p. 315.)

[3] Because both parties restricted their discussions in their appellate briefs to the issue of whether MPA treatment is cruel and unusual punishment under the state and federal Constitutions, we requested, and the parties submitted, supplemental briefing on the issue of "whether Penal Code section 645, subdivision (a) should be interpreted as authorizing the Board of Prison Terms to apply, shortly before a defendant is released from prison on parole, to the trial court for an order imposing as a condition of the defendant's parole the treatment specified in that statute." Both parties assert in their supplemental briefs that section 645, subdivision (a) should *not* be interpreted in this manner.

parole, undergo medroxyprogesterone acetate treatment or its chemical equivalent, in addition to any other punishment prescribed for that offense or any other provision of law, at the discretion of the court.

"(b) Any person guilty of a second conviction of any offense specified in subdivision (c), where the victim has not attained 13 years of age, shall, upon parole, undergo medroxyprogesterone acetate treatment or its chemical equivalent, in addition to any other punishment prescribed for that offense or any other provision of law.

"(c) This section shall apply to the following offenses:

"(1) Subdivision (c) or (d) of Section 286.

"(2) Paragraph (1) of subdivision (b) of Section 288.

"(3) Subdivision (c) or (d) of Section 288a.

"(4) Subdivision (a) or (j) of Section 289.

"(d) The parolee shall begin medroxyprogesterone acetate treatment one week prior to his or her release from confinement in the state prison or other institution and shall continue treatments until the Department of Corrections demonstrates to the Board of Prison Terms that this treatment is no longer necessary.

"(e) If a person voluntarily undergoes a permanent, surgical alternative to hormonal chemical treatment for sex offenders, he or she shall not be subject to this section.

"(f) The Department of Corrections shall administer this section and implement the protocols required by this section. Nothing in the protocols shall require an employee of the Department of Corrections who is a physician and surgeon . . . to participate against his or her will in the administration of the provisions of this section. These protocols shall include, but not be limited to, a requirement to inform the person about the effect of hormonal chemical treatment and any side effects that may result from it. A person subject to this section shall acknowledge the receipt of this information."

Neither the majority nor the parties have cited, and I have not found, any cases construing the language of or otherwise considering section 645. Section 645, subdivision (a) does not specify either the time when or manner

in which a trial court is to exercise its discretion to permit a parole condition of MPA treatment, and its interpretation appears to be an issue of first impression.

## B

The conventional wisdom is that "[t]he goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) A statute must be considered as a whole and harmonized so far as possible with other statutory provisions. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 26, p. 55.) " '[A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts . . . .' " (*People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; see also *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 876-877 [76 Cal.Rptr.2d 841].)

When statutory language is susceptible of more than one reasonable interpretation, a court may "resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history" to assist it in construing ambiguous language. (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) A statute "should be interpreted to make it valid and effective, and a construction favoring constitutionality is preferred. [Citations.]" (1 Witkin & Epstein, *supra*, § 27, p. 56.) A statute susceptible of two constructions should be interpreted, if reasonably possible, to avoid serious and doubtful constitutional questions. (*People v. Birks* (1998) 19 Cal.4th 108, 135 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) A statute should also be "construed to avoid an absurd or bizarre result." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, § 27, p. 57.) If a statute is susceptible of more than one reasonable interpretation, the interpretation that results in the more sensible or pragmatic construction should be adopted. (*Id.* at § 32, pp. 62-63.)

The rule of lenity provides that "[w]hen faced with an ambiguous statute and no extrinsic indicia of legislative intent, courts are required to construe a criminal law 'as favorably to the defendant as its language and intent will reasonably permit.' [Citation.] ' "The defendant is entitled to the benefit of

every reasonable doubt, whether it arise[s] out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." ' [Citation.]" *(People v. Douglas* (2000) 79 Cal.App.4th 810, 815 [94 Cal.Rptr.2d 500].) The rule of lenity applies only when there are two equally plausible interpretations of the statute. *(Ibid.; People v. Prothero* (1997) 57 Cal.App.4th 126, 131 [66 Cal.Rptr.2d 779]; *In re Christian S.* (1994) 7 Cal.4th 768, 780 [30 Cal.Rptr.2d 33, 872 P.2d 574].)

## C

Although the parties apparently assume that section 645 authorizes imposition of MPA treatment only as a condition of parole, I consider the foundational issue to be whether MPA treatment is only a condition of parole that applies during a defendant's parole period or whether MPA treatment can be imposed on a defendant not as a condition of parole but as part of the sentence that begins one week prior to release on parole and continues potentially for his or her lifetime. If the former, then imposition of MPA treatment as part of a sentence is unauthorized. Section 645, subdivision (a) does not contain any language that expressly resolves this issue. It simply provides that a person who commits a qualifying offense "may, upon parole, undergo [MPA] treatment . . . ." (§ 645, subd. (a).) However, other section 645 provisions support the conclusion that MPA treatment is only a condition of parole that terminates on or before expiration of a defendant's parole period. Section 645, subdivision (d) provides: "The *parolee* shall begin [MPA] treatment one week prior to his or her release from confinement in the state prison or other institution and *shall continue treatments until the Department of Corrections demonstrates to the [BPT] that this treatment is no longer necessary.*" (Italics added.) By referring to a person subject to section 645 MPA treatment as a *parolee*, it appears the Legislature intended MPA treatment to be imposed only on parolees and therefore only as a condition of parole during parolees' parole periods (and one week prior thereto). Furthermore, by requiring MPA treatment to continue until the Department of Corrections (CDC) demonstrates to the BPT that it is no longer necessary, it appears the Legislature intended MPA treatment to continue only so long as the CDC and BPT would normally have supervisory authority or jurisdiction over a parolee. Because the CDC and BPT do not have authority or jurisdiction over a parolee after the parolee's parole period has expired, it is implicit that MPA treatment must cease on or before expiration of his or her parole period. Furthermore, section 645, subdivision (f) provides: "The [CDC] shall administer this section and implement the protocols required by this section. . . ." That provision means the CDC is charged with responsibility to provide the MPA treatment to parolees and otherwise administer or supervise the treatment program. Because the CDC does not have authority or jurisdiction to provide treatment or otherwise

supervise persons other than inmates or parolees during their imprisonment and parole periods, it is implicit that the CDC's section 645 administration responsibility applies only during parolees' parole periods (and one week prior thereto) and *not* after expiration of their parole periods. I conclude that under section 645, MPA treatment is a condition of parole that applies only during a defendant's parole period (and one week prior thereto) and not thereafter. If the Legislature had intended MPA treatment to potentially continue after expiration of a defendant's parole period, it could have so provided in a manner similar to the language in section 290 requiring a sex offender to register with local law enforcement agencies during the offender's lifetime.[4]

## D

Because section 645 MPA treatment applies only as a condition of parole, the next issue is *when* that parole condition may be imposed under section 645, subdivision (a). Foster and the People assert, and the majority concludes, that section 645, subdivision (a) provides for imposition of MPA treatment as a parole condition by a trial court at the time of *sentencing*. However, section 645, subdivision (a) does *not* expressly state the time when a trial court is authorized to exercise its discretion to approve MPA treatment as a condition of parole. It simply states: "Any person guilty of a first conviction of any offense specified in subdivision (c) . . . *may, upon parole, undergo [MPA] treatment* or its chemical equivalent, in addition to any other punishment prescribed for that offense or any other provision of law, *at the discretion of the court*." (§ 645, subd. (a), italics added.) That language can reasonably be construed as authorizing a trial court to approve MPA treatment as a condition of a defendant's parole either (1) on sentencing a defendant, or (2) on the request of the BPT shortly before a defendant's release on parole.

Because the legislative intent of section 645, subdivision (a) is not clear from its text, I consider extrinsic sources and apply other rules of statutory construction to determine that legislative intent. (*People v. Coronado, supra,*

---

[4]Section 290 provides: "(a)(1)(A) Every person described in paragraph (2), *for the rest of his or her life* while residing in . . . California . . . shall be required to register with the chief of police of the city in which he or she is residing . . . ." (Italics added.) Section 290 provides that a sex offender's parole shall be revoked by the parole authority if he or she fails to register as required. (§ 290, subd. (h).) Section 290 also provides that a felony sex offender's willful failure to register as required constitutes a felony offense punishable by a prison term of up to three years. (§ 290, subd. (g)(2).) Therefore, section 290's registration requirement is not only a condition of parole but also is an independent requirement that applies after expiration of the parole period. In contrast, section 645 does not provide for MPA treatment for a defendant's lifetime or create a separate offense for refusing treatment. Therefore, it is implicit that under section 645 MPA treatment may be required only as a condition of parole during a defendant's parole period (and one week prior thereto).

12 Cal.4th at p. 151.) One rule of statutory construction is that a statute generally should be construed in a manner that best harmonizes the statute with other relevant statutes. (*Pacific Gas & Electric Co. v. County of Stanislaus, supra,* 16 Cal.4th at p. 1152; *People ex rel. Younger v. Superior Court, supra,* 16 Cal.3d at p. 40; *Terhune v. Superior Court, supra,* 65 Cal.App.4th at pp. 876-877.)

The Penal Code provides that parole conditions generally are imposed by the BPT. "[T]he Legislature has given the [BPT] expansive authority . . . to impose any parole conditions it deems proper. [Citations.]" (*Terhune v. Superior Court, supra,* 65 Cal.App.4th at p. 874.) Section 3000, subdivision (b)(7) provides: "For purposes of this chapter, the [BPT] shall be considered the parole authority." Section 3053, subdivision (a) provides: "The [BPT] upon granting any parole to any prisoner may also *impose on the parole any conditions that it may deem proper.*" (Italics added.) Section 3000, subdivision (b)(4) provides: "The *parole authority* [i.e., BPT] *shall consider* the request of any inmate regarding the length of his or her *parole and the conditions thereof.*" (Italics added.) The BPT normally establishes and imposes conditions of parole shortly before an inmate is released on parole. Section 3000, subdivision (b)(6) reflects that timing, providing: "The [CDC] shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority [i.e., BPT], the conditions of parole and the length of parole up to the maximum period of time provided by law. The inmate has the right to reconsideration of the length of parole and conditions thereof by the parole authority. . . ." Furthermore, regulations reflect that the BPT is the "administrative board responsible for setting parole dates, *establishing parole* length and *conditions* . . . ." (Cal. Code Regs., tit. 15, § 2000, subd. (b)(11), italics added.) Also, "[s]pecial conditions [of parole] may be established and imposed by the [CDC] or the [BPT] . . . ." (*Id.* at § 2513.) Under these statutes and regulations it generally is the responsibility of the BPT, and within its power and authority, to establish conditions for an inmate's parole. (*Terhune, supra,* at pp. 874, 878; *People v. Burgener* (1986) 41 Cal.3d 505, 531 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 753 [80 Cal.Rptr.2d 734, 968 P.2d 445]; 5 Erwin et al., Cal. Criminal Defense Practice (2002) Parole, § 104.05[4][a], p. 104-34; Levenson, Cal. Criminal Procedure (2000) Parole, §§ 31:2, 31:3, pp. 1183-1184.) One authority notes: "Conditions of parole are specified by the [BPT]. Pursuant to the supervisory power of the state over parolees, the [BPT] may impose any conditions it deems proper, and must impose statutory conditions if applicable." (Levenson, *supra,* at § 31:7, p. 1187, fns. omitted.) Therefore, unless a statute expressly requires a specific condition of parole, the BPT generally has the power and discretion to impose conditions on an inmate's parole.

Because section 3000 et seq. provides that the BPT generally is charged with the authority to impose conditions of parole, it is consistent with this statutory scheme to construe section 645, subdivision (a) to provide that the BPT has the authority to impose MPA treatment as a condition of parole but, because of the serious nature of MPA treatment, require the BPT to obtain prior court approval of the BPT's imposition of that condition. Because the BPT normally establishes conditions of parole shortly before a defendant's release on parole (see, e.g., §§ 3000, subd. (b), 3053, subd. (a)), if the BPT deems section 645 MPA treatment to be an appropriate condition of a defendant's parole, it could petition a trial court for approval in its discretion of imposition of that condition during the BPT's normal course of establishing conditions of parole for that defendant. The majority's interpretation of section 645, subdivision (a) to provide that MPA treatment may be imposed by the trial court at the time of sentencing conflicts with the general statutory scheme that the BPT is charged with imposing conditions of parole. Under the majority's time of sentencing interpretation, it is the prosecutor, not the BPT, who requests at a defendant's sentencing that the trial court impose MPA treatment as a condition of the defendant's parole.[5] The majority's time of sentencing interpretation, in effect, makes the prosecutor and/or trial court the *parole authority*, contradicting section 3000, subdivision (b)(7), which provides that the BPT is the parole authority with power to establish and impose conditions of parole. Furthermore, the timing of the imposition of parole conditions at sentencing is drastically different from the statutory scheme. Rather than providing for the imposition of MPA treatment as a parole condition shortly before a defendant's release on parole, the time of sentencing interpretation provides for imposition of a parole condition typically many years before the BPT imposes other conditions of parole. For example, in this case the trial court imposed MPA treatment as a condition of Foster's parole approximately 24 years before the earliest date on which he could be released on parole. It is foreseeable that some defendants who are subject to section 645 may not be released on parole for 40, 50, 60 or more years after their sentencing. It seems premature to establish a discretionary condition of parole like MPA treatment under section 645, subdivision (a) so far in advance of the imposition of other conditions of parole and a defendant's release on parole.

Furthermore, the majority's time of sentencing interpretation of section 645, subdivision (a) is inconsistent with section 645, subdivision (b). The parole conditions imposed by the BPT must include any statutorily required conditions in effect at the time of commencement of parole. (See Levenson,

---

[5]It is also possible under the time of sentencing interpretation that the trial court, on sentencing a defendant, could sua sponte impose MPA treatment as a condition of the defendant's parole.

Cal. Criminal Procedure, *supra*, § 31:7, p. 1187.) For example, section 3053.5 requires a parole condition of abstinence from alcohol use for section 290 sex offenders who have been found to have committed their offenses while intoxicated or addicted to excessive use of alcohol. Section 645, subdivision (b) provides a required MPA treatment parole condition for parolees who have incurred a second conviction of the same specified sex offenses that invoke the application of subdivision (a). However, the statutorily imposed parole conditions are those in effect at the time of commencement of parole. Therefore, had Foster incurred a second conviction for a specified offense, his parole conditions would include MPA treatment only if section 645, subdivision (b) remained in effect at the time of his parole. However, under the time of sentencing interpretation of section 645, subdivision (a), his parole conditions include MPA treatment even if section 645 is not in effect at the time of his parole. I perceive no logical reason to have parole conditions imposed at sentencing if the defendant has a first conviction but imposed only at the time of parole if the defendant has a second conviction. Interpretation of section 645, subdivision (a) to provide for imposition of MPA treatment at the time of imposition of other parole conditions is supported by the rule that a statute should be construed, if possible, to support harmony and consistency with other relevant statutes. (*Pacific Gas & Electric Co. v. County of Stanislaus, supra,* 16 Cal.4th at p. 1152; *People ex rel. Younger v. Superior Court, supra,* 16 Cal.3d at p. 40; *Terhune v. Superior Court, supra,* 65 Cal.App.4th at pp. 876-877.)

A rule of construction is that statutes should be interpreted pragmatically to avoid absurd or bizarre results. (1 Witkin & Epstein, Cal. Criminal Law, *supra,* §§ 27, 32, pp. 57, 62-63.) The majority's imposition at time of sentencing interpretation of section 645, subdivision (a) has a highly unusual and absurd result. A prosecutor could request, and a trial court could order on that request or sua sponte, MPA treatment as a condition of parole for a defendant who may not be released on parole for many years after sentencing. In contrast, imposition of an MPA treatment parole condition at the time of parole is more pragmatic and more closely follows the usual scheme pursuant to which the BPT establishes and imposes conditions of parole shortly before a defendant is released on parole. (*Terhune v. Superior Court, supra,* 65 Cal.App.4th at pp. 874, 878; *People v. Burgener, supra,* 41 Cal.3d at p. 531.) The BPT presumably will be in a better position to determine shortly before a defendant's parole whether a defendant should be subject to MPA treatment as a condition of parole than the prosecutor and trial court at the time of the defendant's sentencing. In addition, the purpose of an MPA treatment parole condition is to lessen the probability of reoffense following release from prison. That purpose is best served by evaluation at the time of parole of the defendant and the then available treatments. MPA treatment

may be the most effective treatment available now, but it is presumptuous to conclude it will remain so at the time of a defendant's release on parole.

Section 645's legislative history does not provide assistance in construing the ambiguity of section 645, subdivision (a). Neither the majority nor the parties cite, and I am unaware of, any legislative history of section 645 that contradicts a time of parole construction of section 645, subdivision (a). Furthermore, the time of parole construction of section 645, subdivision (a) avoids, at least for the present time, the serious constitutional issue whether MPA treatment is cruel and unusual punishment in violation of the state and federal Constitutions. (*People v. Birks, supra*, 19 Cal.4th at p. 135.) Although both Foster and the People ask this court to decide that issue in this appeal, the time of parole construction of section 645, subdivision (a) avoids a premature determination of that serious issue.

Finally, because both alternative interpretations of the ambiguous language of section 645, subdivision (a) are arguably plausible, the rule of lenity should be applied in this case. The rule of lenity requires that a court construe an ambiguous criminal statute as favorably to the defendant as its language and intent will reasonably permit. (*People v. Douglas, supra*, 79 Cal.App.4th at p. 815; *People v. Prothero, supra*, 57 Cal.App.4th at p. 131; *In re Christian S., supra*, 7 Cal.4th at p. 780.) A time of parole interpretation of section 645, subdivision (a) is more favorable to a defendant than the majority's alternative time of sentencing interpretation. A defendant normally would prefer to have consideration of imposition of MPA treatment as a parole condition postponed as long as possible before he or she is released on parole. Because a defendant's personal circumstances near the time of his or her release on parole and the then current scientific consensus as to the advisability of MPA treatment may ultimately weigh against a decision to impose MPA treatment as a condition of parole, postponement of that decision from the time of sentencing until shortly before a defendant's release on parole generally would favor the defendant. Also, a defendant may prefer that the BPT, rather than the prosecutor or sentencing trial court, make the initial decision whether MPA treatment should be imposed as a condition of parole, subject to a trial court's discretionary approval of that parole condition. The rule of lenity supports a time of parole construction of section 645, subdivision (a).

I believe section 645, subdivision (a) authorizes the imposition of an MPA treatment parole condition by the BPT in the normal course of the BPT's imposition of other parole conditions, subject to prior court approval obtained shortly before a defendant's release on parole. The majority, the People and Foster do not provide any persuasive support for a contrary construction of section 645, subdivision (a).

At Foster's sentencing the trial court, as part of the sentence, imposed section 645 MPA treatment as a condition of his parole, which apparently could not occur for at least 24 years. However, under the time of parole construction of section 645, subdivision (a), the court did not have jurisdiction or other authority to impose that parole condition at Foster's sentencing. The trial court's discretion to order MPA treatment arises only if and when the BPT petitions the court for approval of imposition of that parole condition shortly before Foster's release on parole.

Although the majority concludes Foster waived his right to appeal the trial court's imposition at his sentencing of section 645 MPA treatment as a condition of his parole, an appellate court may, and I believe should, review any contention that the sentence imposed is unauthorized. "In passing sentence, the [trial] court has a duty to determine and impose the punishment prescribed by law. [Citations.]" *(People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1589 [266 Cal.Rptr. 710].) "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing. [Citation.]" *(People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) "A claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court. [Citations.]" *(People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [66 Cal.Rptr.2d 423, 941 P.2d 56]; see also *In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13]; *People v. Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1519 [77 Cal.Rptr.2d 492]; *People v. Miles* (1996) 43 Cal.App.4th 364, 367 [51 Cal.Rptr.2d 87].) In *People v. Mustafaa* (1994) 22 Cal.App.4th 1305 [28 Cal.Rptr.2d 172], which involved a guilty plea by the defendant, we noted that a trial court's "fashioning a sentence in a manner [that] is unauthorized by law exceeds the jurisdiction of the court and may be the subject of later review even though no objection was made in the trial court. [Citation.]" *(Id.* at p. 1311.) In *People v. Davis* (1981) 29 Cal.3d 814 [176 Cal.Rptr. 521, 633 P.2d 186], the Supreme Court reversed the trial court's imposition of a sentence that exceeded the punishment authorized by statute, noting it was jurisdictional error that was subject to correction on appeal. *(Id.* at pp. 827-832.) Furthermore, *Davis* concluded the statute was ambiguous and should be interpreted favorably to the defendant. *(Id.* at pp. 828-832.)

Because an unauthorized sentence may be corrected on appeal, I disagree with the majority's conclusion that Foster is precluded from challenging the

trial court's imposition at his sentencing of section 645 MPA treatment as a condition of his parole. *People v. Panizzon* (1996) 13 Cal.4th 68 [51 Cal.Rptr.2d 851, 913 P.2d 1061] does not support the majority's position because in *Panizzon* the sentence imposed pursuant to the defendant's plea bargain did *not* exceed the sentence authorized by statute. (*Id.* at p. 88.) Based on the time of parole construction of section 645, subdivision (a), the trial court imposed an unauthorized sentence Foster may challenge on appeal (*U.S. v. Marin* (4th Cir. 1992) 961 F.2d 493, 496) and this court can correct on appeal (*People v. Dotson, supra,* 16 Cal.4th at p. 554, fn. 6).

I conclude the trial court erred by entering the judgment to the extent it imposed at Foster's sentencing section 645 MPA treatment as a condition of Foster's parole. I would modify the judgment by striking the trial court's order imposing section 645 MPA treatment as a condition of Foster's parole.

Appellant's petition for review by the Supreme Court was denied November 13, 2002. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.