Filed 11/15/13  P. v. Cowper CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL ELIJAH COWPER,<br><br>    Defendant and Appellant. | A137398<br><br>(Solano County<br>Super. Ct. No. VCR209766) |

## I. INTRODUCTION

After pleading no contest to one count of committing lewd acts on a child and one count of possession of child pornography (respectively, Pen. Code, §§ 288, subd. (a), and 311.11, subd. (a))[1], appellant was denied probation and, pursuant to a negotiated disposition, was sentenced to a total term of imprisonment of three years and eight months on the two counts.  Per his brief to us, he appeals from that conviction pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  However, his actual appeal is from an order of the trial court denying his pre-plea motion to suppress evidence.  Such an appeal is specifically authorized by section 1538.5, subdivision (m), and California Rules of Court, rule 8.304(b)(4)(A).  We have reviewed the record and the law regarding appellant's motion to suppress and affirm the trial court's order.

---

[1] All further unspecified statutory references are to the Penal Code.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Mary Cowper (hereafter Mrs. Cowper), appellant's mother, managed a licensed child care facility in her home in Vallejo. Appellant, then 30 years old, had a bedroom in that house.

On November 22, 2010, Kimberly Miller, an investigator with California's Community Care Licensing Division of the Department of Social Services, went to that house in connection with an investigation she was conducting of possible child abuse occurring at the facility. That investigation had started a few days earlier, on November 17, 2010, when Miller conducted an interview with an eight-year-old girl identified as A.C. A.C. had started coming to Mrs. Cowper's facility when she was about two or three years old. In May 2004, appellant asked A.C. to "take down her pants and her underwear and then he asked her to turn around in a circle while he photographed her parts or photographed her." This occurred, A.C. related to Miller, when she was under the care of Mrs. Cowper at the latter's home.

Miller visited the Cowper residence on November 22 in order to serve a ten-day complaint notification and to conduct an investigation which, she testified, "could go criminal." At that point in time, she knew that appellant was the person suspected of committing a crime. Mrs. Cowper was in "her side yard" when Miller arrived at her home, but Miller asked her "if I could tour the facility, and she stated that I could." Miller then did so, asking to go into various rooms; she did so, she explained, because prior to her visit, she had done a "facility file review," a review which showed that no rooms were "off limits," i.e., that "every room in the house is part of the facility floor plan. [Mrs. Cowper] did not deem it to be off limits."

When Miller toured the Cowper house, there were children there, but they were in a television room and a back room. Other than the children, Mrs. Cowper told Miller that no one else was present in the home. Miller asked Mrs. Cowper to get the records for the children and the staff, which Mrs. Cowper did. Before Miller examined those records, she walked around the house to review its condition and also see who else was present. In the course of doing so, she asked Mrs. Cowper "if I could please go into the rooms."

2

Mrs. Cowper apparently agreed to that request, because one of the rooms Miller wanted to inspect was appellant's and, when Mrs. Cowper took her to the entrance to that room, she advised Miller "that he was not at home, and that he generally keeps his bedroom door locked." But, when Mrs. Cowper turned the doorknob to that room, the door opened and Miller "smelled something that smelled like marijuana" coming out of his room. Miller then told Mrs. Cowper that she needed to determine if that room was safe, because the door was unlocked and some of the children could have entered it. Miller was thus permitted to enter appellant's bedroom; she made some observations about its contents (including some CD's and flash drives), but then left the room and Mrs. Cowper closed its door.

Miller then went to look at the facilities records and interviewed some of the children who were there; she then returned to appellant's bedroom, but found the door now locked. Miller "requested" that Mrs. Cowper open the door again so she could check the bedroom "more thoroughly." In so doing, she told Mrs. Cowper that her office had "received a complaint that her son, Sam, had been taking photographs of some of the day care children without their clothes, and I would like to take the DVD's, the CD's and the flash drives as evidence." Mrs. Cowper let her into the room again, stating that "there shouldn't be anything bad on them."

In the course of her inspection of appellant's room, Miller found several CD's and flash drives, a knife in a box, and marijuana under the bed. Although then without a warrant, Miller took the CD's and DVD's and the knife, marijuana, etc., from appellant's room.

The following week, Miller went to her agency's Sacramento office and viewed the contents of the CD's, DVD's and flash drives she had collected from the Cowper residence and childcare facility; the material she viewed showed images of children involved in sexual acts with men. Miller then contacted the Vallejo Police Department regarding her visit to the residence and facility, and turned over the electronic material she had taken to one of its detectives. Another detective obtained a warrant to search those drives. After that review, the first detective obtained a warrant to search the

Cowper house and facility, and seized a hard drive from a computer found there. A review of the flash drives by the Vallejo police showed that they contained child pornography.

The first Vallejo police detective interviewed two young girls, S.P. and A.C., in December 1010 and January 2011. S.P. told him that, when she was between the ages of three and four, appellant touched her on her legs, chest and back and, when she was a few years older, on her buttocks and vaginal area.

On March 10, 2011, the Solano County District Attorney's office filed a four count felony complaint charging appellant with three counts of violating Penal Code section 288, subdivision (a), the commission of lewd acts on a child, and one count of violating section 311.11, subdivision (a), possession or control of child pornography. On August 12, 2011, appellant, via his counsel, filed a motion to suppress evidence taken by Miller from the facility and the Cowper home. The district attorney filed his opposition to that motion on August 25, 2011, and appellant responded on September 13, 2011. The court ordered that a hearing on this motion be continued to a later date.

On September 20, the district attorney filed a four count information charging appellant with the same four counts alleged in the earlier complaint. On September 30, 2011, appellant was arraigned and pled not guilty to all four counts.

On October 28, 2011, appellant's motion to suppress came on for hearing; the motion was argued and taken under submission by the trial court. On November 10, 2011, further argument was had before the trial court, and it then denied the motion to suppress.

On June 8, 2012, appellant renewed his motion to suppress under section 1538.5, a motion the prosecution opposed. However, no hearing was ever held on this second motion, as the trial court reset the matter twice.

On August 9, 2012, appellant withdrew his plea of not guilty and entered pleas of no contest to counts three and four of the information, i.e., one charge of violating section 288, subdivision (a), and one count of violating section 311.11, subdivision (a).

4

At a sentencing hearing held on November 29, 2012, the court denied appellant probation and, pursuant to the previously negotiated disposition, sentenced him to the low term of three years for his violation of section 288, subdivision (a), and a consecutive sentence of eight months (one-third of the midterm) for his violation of section 311.11, subdivision (a), for a total of three years and eight months.

On December 10, 2012, appellant filed a notice of appeal based on the denial of the motion to suppress brought, as noted above, under section 1538.5, and also challenging the validity of the plea. On December 19, 2012, the trial court granted appellant's request for a certificate of probable cause regarding the validity of the pleas of no contest entered by appellant and the trial court's denial of probation. It did not, however, grant such a certificate regarding the denial of appellant's motion to suppress.

### III. DISCUSSION

In accordance with the procedures outlined in *People v. Wende, supra,* 25 Cal.3d 436, and *Anders v. California* (1967) 386 U.S. 738, 744, we conclude that there are no meritorious issues to be argued on appeal.

First of all, appellant specifically waived his right to appeal in executing the change of plea form on August 9, 2012. Further, and contrary to the statement in appellant's *Wende* brief that the trial court "did not orally inquire as to that waiver at the hearing on [appellant's] change of plea," the trial court specifically called appellant's attention to that form and asked appellant to confirm that the "initials and a signature" on the form were his, and he did so. Then the court asked appellant: "If you had any questions regarding the contents of this form, did you have the chance to speak with your lawyer about those questions?" Appellant answered: "Yes."

As stated by our Supreme Court in *People v. Panizzon* (1996) 13 Cal.4th 68, 83: "[A] court may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment." (See also *id.* at p. 84; *People v. Foster* (2002) 101 Cal.App.4th 247, 250; *People v. Nguyen* (1993) 13 Cal.App.4th 114, 119-122; *People v Castrillon* (1991) 227 Cal.App.3d 718, 722.) Under those authorities, we conclude that appellant did, in fact, waive his right to appeal.

5

Secondly, although, as just noted, the trial court did not grant a certificate of probable cause regarding the denial of appellant's motion to suppress, we consider appellant's principal basis for appealing to be that order of the court, i.e., its order of November 10, 2011, in which it found that "the search was reasonable under the circumstances." We agree; as noted above, Miller testified that "every room in [Mrs. Cowper's] house is part of the facility floor plan." Further, per her testimony, Mrs. Cowper specifically let Miller inspect the entire facility, including appellant's bedroom. Thus, anything and everything that Miller collected therefrom fell within the "plain view" doctrine. (See *People v. Lenart* (2004) 32 Cal.4th 1107, 1118-1119; see also 4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Illegally Obtained Evidence, §§ 352 & 353, and cases cited therein.)

Finally, we also conclude there is no need for further briefing on either the validity of appellant's plea of no contest to the two counts and the trial court's denial of probation. The record before us shows that appellant was specifically questioned by the court regarding that change. And the trial court clearly did not abuse its discretion in denying appellant probation because, immediately after the change of plea, his counsel specifically waived the referral of the case to the probation department and the preparation of a probation report.

## IV. DISPOSITION

Both the order denying appellant's motion to suppress and the judgment, including the sentence imposed, are affirmed.

_____
Haerle, Acting P.J.

We concur:


_____
Richman, J.


_____
Brick, J.*




      * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.