Filed 2/3/16  P. v. McMurry CA5
Opn. following rehearing

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEREMY DALE McMURRY,<br><br>    Defendant and Appellant. | F069303<br><br>(Super. Ct. Nos. 13CM3310 & 13CM3765)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P.J., Poochigian, J. and Smith, J.

Pursuant to a plea agreement, Jeremy Dale McMurry pled guilty to five counts of child molestation and was sentenced to a term of 105 years to life in prison. In addition to the prison term, the trial court ordered that if McMurry is released on parole, then he will have to undergo treatment with medroxyprogesterone acetate pursuant to the provisions of Penal Code section 645, subdivision (a).[1] This treatment is sometimes referred to as hormone suppression therapy or chemical castration. We will refer to the treatment as hormone suppression therapy throughout this opinion. The trial court also issued an order pursuant to section 1202.05 prohibiting visitation between McMurry and D.C., one of the children alleged to be a victim in the action.

McMurry makes two arguments in this appeal, both of which the People concede are meritorious. First, McMurry argues that hormone suppression therapy was not part of the agreement that he entered into with the prosecutor and, therefore, the trial court changed the terms of the plea agreement when imposing this condition. He argues the matter must be remanded to the trial court to allow the trial court to remove the condition from the sentence, or, if it refuses to do so, to allow McMurry to either withdraw his guilty plea or accept the modification to the agreement. The People agree the trial court changed the plea agreement, and that we must remand the matter to the trial court to resolve the issue.

Second, McMurry argues the trial court erred when it issued an order prohibiting visitation between himself and one of the named victims, D.C. McMurry argues that section 1202.05, the section on which the trial court relied, is inapplicable in this case. The People concede the trial court erred.

As described below, we will reverse and remand the matter to allow the trial court to resolve the hormone suppression therapy issue. We are also compelled to strike the section 1202.05 order that prohibited visitation between McMurry and D.C.

---

**1** All statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL SUMMARY

Charges were filed against McMurry in two separate complaints, which we will refer to as the child molestation complaint, and the child solicitation complaint. The child solicitation complaint was filed on August 12, 2013, and contained three causes of action: two counts of contact with a minor with the intent to commit a sexual offense (§ 288.3, subd. (a)), and one count of possession of child pornography (§ 311.11, subd. (a)).

The child molestation complaint was filed on September 19, 2013. The first amended complaint contained 19 causes of action: four counts of lewd and lascivious acts on a child under the age of 14 by force or fear (§ 288, subd. (b)(1)), six counts of aggravated sexual assault of a child (§ 269, subd. (a)), one count of kidnapping to commit rape (§ 209, subd. (b)(1)), one count of possession of child pornography (§ 311.11, subd. (a)), four counts of rape by force or fear (§ 261, subd. (a)(2)), and three counts of oral copulation in concert with another (§ 288a, subd. (d)(2) & (3)). The enhancement allegations are less than clear, but it appears that each count except for the aggravated sexual assault and the child pornography counts alleged McMurry was eligible for a sentence of 25 years to life pursuant to the provisions of section 667.61.

Prior to the preliminary hearing, the prosecutor offered a plea bargain to McMurry. In the child molestation complaint, McMurry would be required to plead guilty to two counts of lewd and lascivious acts in violation of section 288, subdivision (b)(1), two counts of aggravated sexual assault in violation of section 269, subdivision (a), and one count of oral copulation in concert with another in violation of section 288a, subdivision (d). The offer required the sentence to be imposed for the aggravated sexual assault charges to be 15 years to life, while the sentence to be imposed on the remaining counts was to be 25 years to life. The sentence on each count was required to be imposed consecutively for a total prison term of 105 years to life.

In the child solicitation complaint, McMurry would have to plead guilty to one count of contact with a minor with the intent to commit a sexual offense in violation of section 288.3, subdivision (a), and one count of possession of child pornography in violation of section 311.11, subdivision (a). The sentence for these offenses would be three years four months, and would run concurrently with the sentence in the child molestation complaint.

McMurry accepted this offer at a pretrial conference. The trial court accepted his plea after thoroughly advising McMurry of the rights he was giving up and the consequences of the plea. The trial court then sentenced him to the agreed upon term.[2]

## DISCUSSION

*Hormone Suppression Therapy*

The first issue identified by McMurry is the condition imposed by the trial court that requires McMurry to be treated with hormone suppression therapy pursuant to section 645, subdivision (a). McMurry contends this condition is additional punishment, which changed the terms of the plea agreement.

Section 645, subdivision (a) provides that the first time a person is convicted of specified sex offenses,[3] and the victim was under 13 years of age, the trial court may impose as a condition of parole that the defendant undergo hormone suppression therapy. The only published case to consider this issue that we have located is *People v. Foster* (2002) 101 Cal.App.4th 247 (*Foster*). In dicta, *Foster* stated that "hormone suppression treatment is not a mere condition of parole; it is a form of punishment, the imposition of

---

**2** There was one slight deviation from the written offer. On the child solicitation complaint, the parties could not determine how the prosecutor arrived at the term of three years four months. After discussion, the parties agreed the term on this complaint would be three years eight months. This term would be imposed to run concurrent to the sentence in the child molestation complaint. McMurry did not complain or have any questions about the change.

**3** Section 645, subdivision (c) lists the offenses to which subdivisions (a) and (b) apply and, as pertinent here, includes convictions for violating section 288, subdivision (b)(1), and section 288a, subdivision (d).

4.

which is part of the defendant's sentence." (*Id*. at pp. 251–252.)  The basis of this conclusion was the statute itself, which provides that the trial court may order the defendant "upon parole, undergo medroxyprogesterone acetate treatment or its chemical equivalent, in addition to any other punishment prescribed for that offense or any other provision of law …." (§ 645, subd. (a).)  The *Foster* court interpreted this provision as indicating this treatment is a form of punishment, a conclusion with which we, and the parties, agree.

The agreement made between McMurry and the prosecutor did not mention either section 645, subdivision (a) or hormone suppression therapy.  Nor did the issue come up when the trial court was advising McMurry of the consequences of his plea or when it accepted his plea.  Accordingly, and the parties agree, hormone suppression therapy was not part of the plea agreement.  This fact distinguishes this case from *Foster*.  In *Foster*, the appellate court found hormone suppression therapy was part of the plea agreement because it was identified in the plea agreement form, and was specifically addressed by the trial court when the defendant was advised of the consequences of his plea.[4]

Since the trial court imposed punishment that was not part of the plea bargain, we turn to the nature of plea bargains.  The Supreme Court in *People v. Segura* (2008) 44 Cal.4th 921 (*Segura*) explained the plea agreement process.

> "Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' [Citations.]  Plea agreements benefit that system by promoting speed, economy, and the finality of judgments. [Citations.] [¶] As we previously have explained, the process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.]  Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment

---

[4]  The appellate court held that because hormone suppression therapy was part of the plea agreement, the defendant could not challenge the condition on the ground that it constituted cruel and unusual punishment.  (*Foster*, *supra*, 101 Cal.App.4th at p. 249.)

than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged, either in degree [citations] or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution. [Citations.] But implicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them.' [Citation.]" (*Segura, supra,* 44 Cal.4th at pp. 929–930.)

The Supreme Court next observed the prosecutor is the only party authorized to negotiate on behalf of the state, and the trial court cannot substitute itself in place of the prosecutor. (*Segura, supra,* 44 Cal.4th at p. 930.) "'Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition, would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter. [Citation.]'" (*Ibid.*)

The next topic addressed was the contract aspects of a plea agreement.

"Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles. [Citations.] Acceptance of the agreement binds the court and the parties to the agreement. [Citations.] '"When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement."' [Citations.]

"For its part, of course, the trial court may decide not to approve the terms of a plea agreement negotiated by the parties. [Citation.] If the court does not believe the agreed-upon disposition is fair, the court 'need not approve a bargain reached between the prosecution and the defendant, [but]

6.

it cannot change that bargain or agreement without the consent of both parties.' [Citations.]

"Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, [either] directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." [Citation.]'" (*Segura, supra,* 44 Cal.4th at pp. 930–931, fn. omitted.)

In this case, the parties agree that the trial court's imposition of hormone suppression therapy was beyond the scope of the plea agreement. The parties also agree that we should remand the matter to the trial court for further proceedings. At those proceedings, the trial court must decide whether it will sentence McMurry pursuant to the agreement reached by the parties, which would require it to delete hormone suppression therapy requirement imposed at sentencing. If the trial court is not willing to accept the agreement made by the parties, McMurry will be faced with one of two choices: (1) accept the sentence imposed by the trial court even though it differs slightly from the agreement, or (2) withdraw his plea and proceed to trial.

*Visitation Order*

The second issue identified by McMurry relates to the order prohibiting contact with D.C. The trial court made this order pursuant to section 1202.05. This section provides that when a defendant is sentenced to state prison for violating one of nine specifically identified code sections, and "the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim."

D.C. was identified as the victim in two counts in the child solicitation complaint. McMurry pled guilty to one of these counts, contact with a minor with the intent to

commit a sexual crime in violation of section 288.3, subdivision (a). Section 288.3, subdivision (a) is not one of the sex crimes listed in section 1202.05. As a result, McMurry argues, and the People concede, the trial court did not have authority to issue an order prohibiting McMurry from having any contact with D.C. pursuant to this section. Therefore, the no visitation order as to D.C. must be stricken.

## DISPOSITION

The no visitation order is stricken. The matter is remanded to the trial court for further appropriate proceedings relative to the plea agreement and hormone suppression therapy consistent with this opinion.